AUSTIN, NICHOLS & CO. *et al. v.* UNITED STATES (No. 1456).[1]

1. TRADE CATALOGUES AS EVIDENCE.

The so-called catalogues are designed solely to give information to the trade concerning the supplies carried and the prices at which these may be purchased; they furnish no evidence whatever of any intention to classify vegetable products according to table use and are valueless in fixing commercial designation.

2. SPANISH RED PEPPERS—PIMIENTOS MORRONES.

It is not true that pleasantness in taste is essential to a vegetable. These peppers, as appears from the evidence, are used both as a garnish and as food. They are vegetables as that term is commonly, ordinarily, and popularly understood, and were dutiable under paragraph 252, tariff act of 1909.

United States Court of Customs Appeals, March 18, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7590 (T. D. 34667).

[Affirmed.]

*Comstock & Washburn* for appellants.

*Bert Hanson,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Merchandise in tins, invoiced as "pimientos morrones" and imported at the port of New York, were classified by the collector of customs as prepared vegetables and assessed for duty at 40 per cent ad valorem under the provisions of paragraph 252 of the tariff act of 1909. The paragraph in question is as follows:

252. Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared in any way; any of the foregoing not specially provided for in this section, and bean stick or bean cake, miso, and similar products, forty per centum ad valorem.

The importers protested that the goods were not prepared vegetables and that they were dutiable either at 10 or 20 per cent ad valorem as a nonenumerated article under paragraph 480, or at 25 per cent ad valorem under paragraph 269 as vegetables in their natural state, or at 2½ cents per pound under paragraph 298 as capsicum, red peppers, or cayenne pepper, or free of duty under paragraph

---

[1] Reported in T. D. 35249 (28 Treas. Dec., 456).

571 as fruits or berries, green, ripe, or dried, or as fruits in brine not specially provided for. The claim of the protest upon which the importers really relied, however, was that the pimientos were non-enumerated manufactured articles, dutiable at 20 per cent ad valorem under paragraph 480, which said paragraph is as follows:

. 480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

The Board of General Appraisers overruled the protests and the importers appealed.

On the hearing before the board four witnesses were called on behalf of the importers, and from their testimony and the sample in evidence it appears that the pimientos under consideration are what are commonly known as sweet red peppers or sweet Spanish peppers. Such peppers are picked from the vine while green, but they ripen after picking and acquire the rich red color which distinguishes them from what are generally known as sweet green peppers. After removing the skins and seeds the ripe red peppers are put up in tins, and in that form constitute the product known as Spanish peppers or pimientos morrones.

All of the witnesses for the importers testified that sweet red peppers were used as a garnish, and three of them declared that, so far as they knew, peppers of the kind imported were not eaten as part of the meal or used as a vegetable.

One of the importers' witnesses, Seymour S. Mack, stated that in the trade the term "vegetables" meant "something from the vegetable kingdom that can be served as a side dish and eaten as such, which is eaten without having any unpleasant taste, like pease, beans, mushrooms, brussels sprouts, spinach." He further declared that pimientos were not vegetables in the commercial sense, because "they can not be eaten as taken out of the can and just warmed up."

Dagobert D. Ries, another of the witnesses for the importers, testified that sweet red peppers had a repellant taste and were not listed as vegetables in commercial catalogues. He said further that peppers such as the exhibits could not be eaten, because they were too pungent, too strong. He admitted, however, that they were not as strong as green peppers. On this testimony and certain commercial catalogues introduced in evidence the importers argue that sweet red. peppers such as those imported are exclusively used as a garnish for culinary confections, and that as they are not used as a side dish and are never eaten as a food they are not vegetables either in the common or in the commercial sense of the term. The testimony upon which the importers rely fairly establishes that the merchandise

in controversy is used as a garnish, but that it goes so far as to prove that the peppers are·used either exclusively or chiefly for that purpose can not, we think, be conceded.

While all of the importers' witnesses were very positive that the merchandise in question was used as a garnish, none of them would positively testify that the commodity in issue was not used as a food. Some of them did say that they had never *seen* pimientos eaten as part of a meal and that pimientos were not eaten *to their knowledge*, but that was as far as their testimony went.   For aught that appears from the record, the experience of these witnesses with pimientos served on the table may have been very limited indeed, and certainly the fact that they.never saw sweet red peppers eaten and had no knowledge that they were used as a food, unaccompanied by any showing of their opportunities for knowing the uses to which sweet red peppers might be or were devoted, would hardly warrant the deduction that such peppers are not eaten or used as food.   But even if the record disclosed that the witnesses just mentioned had ample opportunities for knowing just how and for what the importation was used, we certainly should hesitate to accept their negative testimony in preference to that of the positive, direct, affirmative testimony of the importers' witness Schwiers, who testified not only that he had seen sweet red peppers made up into sandwiches and served with cold meats and salads, but that he had eaten the peppers himself, had seen them eaten by others, and knew that they were eaten to a large extent by people in general. True, Mr. Schwiers did say that the pimientos were served with cold meats and were made up as a component of salads and sandwiches for their color and decorative effect, but as he also stated that the peppers were eaten to a large extent by people in general, no other conclusion can be drawn from the testimony than that sweet red peppers, like many other plant products, serve the purpose both of a garnish and a vegetable.

Indeed, the sweet red pepper is not only recognized as a vegetable by standard works on cooking, but recipes for its preparation as a food are therein just as carefully provided for as they are for such other *solanaceæ* as the egg plant, the potato, and the tomato.

Moreover, it is freely conceded by appellants that the sweet *green* peppers are eaten as a food and that they are a well-recognized variety of vegetable.   The sweet red pepper, as shown by the evidence and the authorities, is nothing more and nothing less than the ripened green pepper, and as there is nothing in the evidence which would justify us in finding that the ripening process so alters the green pepper as to make it inedible or unacceptable as a food, we do not see how it can be concluded that the pepper has ceased to be a vegetable simply because it has ripened and changed its color.   (See "Pepper," Cyclopedia of American Horticulture, by L. H. Bailey.)   We are

therefore of opinion that the sweet red peppers here in controversy are vegetables as that term is commonly, ordinarily, and popularly understood.

This brings us to the consideration of whether prior to the tariff act of 1909 there was given to the term "vegetable" by the trade and commerce of the country a meaning different from that commonly and popularly accorded to it. Testifying on this subject, one of the witnesses declared, as already stated, that to the trade of the country the term "vegetable" meant any product of the vegetable kingdom which can be served as a side dish and which, like pease, beans, mushrooms, brussels sprouts, or spinach, can be eaten without any unpleasant taste. This definition seems to be at variance with itself and provides a test which we think would exclude some of the very things therein enumerated as vegetables. Tastes are about as multifarious as the people whom they bless or make miserable, and it is difficult to believe that the trade of the country, severely practical in all its ways, should have fixed on a *pleasant* taste as the criterion by which the character of a commercial product should be judged. In fact, if the status of an article as a vegetable be made dependent on a pleasant taste, then it is quite certain that not a few of the plant products which are now accepted by the whole world as vegetables must be excluded from that category. The catalogues introduced in evidence do not pretend to list substances of vegetable origin intended for the table under such separate headings as fruits, garnishes, condiments, relishes, vegetables, and so forth, and there is nothing in any of the catalogues from which it could be fairly inferred that sweet red peppers are not regarded by the trade as vegetables. In the catalogue of Reiss & Brady, dated January 16, 1905, sweet red peppers are not specifically named as a vegetable, but the same may be said of lentils and California asparagus, both of which are commonly recognized as vegetables and neither of which is claimed to be excluded from that designation by trade usage. In Reiss & Brady's catalogue, dated November, 1907, Spanish red peppers or pimientos morrones have a distinct heading of their own, and are listed immediately following "French haricots (string beans)" and "other imported vegetables." California asparagus and lentils are separately listed under their distinctive names, the latter after "dried imported vegetables" and the former after "German vegetables" and "pearl onions." There is no designation of asparagus or lentils as "vegetables," but if either is to be so regarded because of its location in the catalogue, then, by the same reasoning and the same rule, Spanish red peppers or pimientos must be accorded a like classification. In Meyer & Lange's catalogue, dated April 5, 1909, Spanish peppers are listed under that designation in the same column with "capers," "imported prepared mus-

tard," and "herbs," but if, because of the company in which they are found, Spanish peppers must be regarded as a condiment, then for a better reason tinned apples, blueberries, and pineapples can no longer be considered commercially as fruits, since they are listed in the same catalogue under the heading of vegetables. We think that the so-called catalogues are designed solely to give information to the trade concerning the supplies carried and the prices at which they may be purchased. At all events, they furnish no evidence whatever of any intention to classify vegetable products according to table use, and in our opinion are utterly valueless as evidence of commercial designation.

The decision of the Board of General Appraisers is *affirmed.*