VON BREMEN, ASCHE & Co. *v.* UNITED STATES (No. 2370).[1]

1. PIMIENTOS ARE VEGETABLES.
    Pimientos are vegetables within the meaning of the provision for vegetables in paragraph 773, tariff act of 1922.—Austin, Nichols & Co. *v.* United States (6 Ct. Cust. Appls. 9; T. D. 35249).

2. CONSTRUCTION, KNOWLEDGE OF JUDICIAL DECISIONS IMPUTED TO CONGRESS.
    It must be presumed that Congress knew that this court had held pimientos to be vegetables under the tariff act of 1909 (Austin, Nichols & Co. *v.* United States, 6 Ct. Cust. Appls. 9; T. D. 35249); and it is inferable that, had it intended them to be otherwise dutiable, it would have said so in subsequent tariff acts.

3. CONSTRUCTION, DOUBT FAVORS IMPORTER.
    A doubt as to the construction of a paragraph is to be resolved in favor of the importer.

4. "PIMIENTOS, DULCES MORRONES"—WHOLE—PART.
    Merchandise known as *pimientos, dulces morrones*, pimientos which have been roasted, skinned, and cored, reducing their weight at least 30 per cent, and canned, is not *whole* pimientos under paragraph 779, tariff act of 1922. The word "whole" in this paragraph is not limited to mean the "whole of the usable part of the pimiento." In line with Austin, Nichols & Co. *v.* United States (6 Ct. Cust. Appls. 9; T. D. 35249), such prepared pimientos are prepared vegetables under paragraph 773.

---

[1] T. D. 40585.

United States Court of Customs Appeals, December 17, 1924

[Reversed.]

*Barnes, Wilson & Halstead* for appellants.

*William W. Hoppin,* Assistant Attorney General (*John A. Kemp,* special attorney, of counsel), for the United States.

*William A. Hines* amicus curiæ.

[Oral argument Oct. 20, 1924, by Mr. Halstead, Mr. Hoppin, and Mr. Hines]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The question here is whether certain merchandise in tins and conceded to be prepared or preserved, known as ''pimientos, dulces morrones,'' entered at the port of Galveston, is properly classifiable under paragraph 779 or paragraph 773 of the tariff act of 1922.

Paragraph 779 provides in part as follows:

Spices and spice seeds * * * whole pimientos, packed in brine or in oil, or prepared or preserved in any manner, 6 cents per pound.

Paragraph 773 provides for—

Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for * * * 35 per centum ad valorem.

The collector applied the provision in paragraph 779 and the Board of General Appraisers sustained his action.

The merchandise was produced in Spain in the following manner: Pimientos which grow on vines or bushes are taken therefrom to a factory, roasted in ovens until the skins become black and brittle, and are removed. Then by means of an instrument resembling an apple corer, or with a knife, the "cup" or stem end of the pimiento about one-half inch down from the stem, the seeds and the core, are removed. By these operations some part of the meat or pulp is removed, and the weight of the whole pimiento reduced about 30 to 40 or perhaps 45 per cent. What remains is then packed in tins and constitutes the imported merchandise.

The real question here is whether pimientos, thus treated and deprived of at least 30 per cent of their weight, can be said to be *whole* pimientos under paragraph 779.

That if not they may be regarded as vegetables is settled so far as we are concerned by our decision in Austin, Nichols & Co. *v.* United States (6 Ct. Cust. Appls. 9; T. D. 35249), because it is agreed that the merchandise there, which the Board of General Appraisers held to be vegetables, in which view we concurred, was substantially like the importations here. That case arose under the tariff act of 1909, which contained no provision for whole pimientos.

The controversy there was whether the merchandise was vegetables under a paragraph not different, for the purposes of this case, from the provision of paragraph 773 above quoted, or was a nonenumerated manufactured article. The Government successfully contended that pimientos were vegetables.

We conclude that the pimientos here are vegetables prepared or preserved as claimed by the importers, unless their classification is controlled by the provision in paragraph 779 for *whole* pimientos. This provision seems to have made its first appearance in the tariff act of 1922.

In its decision in this case the Board of General Appraisers proceeded upon the theory that Congress meant by the term "whole pimientos" the "whole of the usable part of the pimiento."

The Government relies much upon this view, which it claims is fortified by the testimony of examiners of merchandise at the port of New York that for some 15 years they have known of large importations of pimientos at that port like those here involved and have not known of importations of whole pimientos.

From this evidence the Government assumes that when the tariff act of 1922 was enacted whole pimientos packed in brine or oil, or prepared or preserved in any manner, were not imported and argues that Congress must have intended the provision therefor in paragraph 779 to apply to such as the importations here, and that otherwise that provision would be of no effect.

We are not inclined to rely much upon this theory.

A witness for importer in answer to a question propounded by one of the general appraisers said that there was more than one grade of pimientos; that "there are other pimientos imported whole * * * without the stem removed." It is interesting to note in this connection that another of importers' witnesses produced as a sample, to illustrate the general appearance of pimientos, a can or jar containing whole pimientos grown in America, which he said he obtained in the market here.

So far as we are advised, Congress may have intended to assess a duty upon pimientos competing with such domestic production.

Regardless of this conjecture, however, we advance to the consideration of what was actually meant by the term "whole pimientos." This must be determined by the ordinary meaning of the words used, and as to that, we think there can be little doubt.

The whole article is that article in its entirety. We early learned that "the whole is equal to the sum of all its parts," the corollary of which necessarily is that the whole diminished by some of its parts is not the whole.

If Congress had intended by the new provision to cover parts of pimientos as well as whole ones, it were easy to have said so. It will be presumed to know that such parts of pimientos as are here involved would be dutiable as vegetables prepared or preserved under the opinion of this court in the Austin, Nichols case, and if it intended to exclude the same from the effect of that decision apt and unambiguous language was at hand with which to express that intent.

The view most favorable to the Government as to the meaning of the term "whole pimientos" is that it is ambiguous, and so conceding, without admitting, the importer is entitled to the benefit of the doubt as to its interpretation.

We feel clear, however, that the term "whole pimientos" does not include the pimientos here which have been deprived of their skin, core, seeds, and part of the pulp, and thereby reduced in weight at least 30 per cent, perhaps more.

The Board of General Appraisers should have sustained the protest, and its judgment is, therefore, *reversed.*