(C.D. 2080)

MARINE PRODUCTS CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 14, 1959)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Richard E. FitzGibbon,* trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; JOHNSON, J., concurring

DONLON, Judge: Merchandise invoiced and entered as canned pimientos was imported from Mexico at San Diego, Calif. Classification was claimed under the *eo nomine* provision for pimientos, prepared or preserved, of paragraph 775 of the Tariff Act of 1930, with duty at 6 cents per pound. The collector, however, classified the merchandise as vegetables, prepared or preserved, not specially provided for, with duty under the not-specially-provided-for classification of paragraph 775 at 35 per centum ad valorem.

Five cases have been consolidated for trial. Plaintiff's protests renew the entry claim for *eo nomine* classification as pimientos. By protest amendment, plaintiff claims also that duty should be computed only on the net weight of the pimientos, excluding the liquid or other packing material in the cans.

Plaintiff introduced the testimony of two witnesses; also four exhibits. Defendant's case consists of one exhibit. Plaintiff filed a

brief. Defendant elected not to do so. This is not to say, however, that defendant failed to participate actively in the trial. Through cross-examination of plaintiff's witnesses and frequent objection to evidence which plaintiff adduced, defendant has indicated what its position is.

Government counsel stated to the court: "It's not a question whether it [this merchandise] is a chile or whether it is a pimiento. The Government doesn't say that it is a chile. The Government says that it is a hybrid, and, therefore, it is not a pimiento." (R. 60.)

In our view of the matter, tariff classification is not necessarily determined, as defendant asserts, according to botanical status. There are other considerations, and those we shall weigh after first considering this contention on the part of defendant.

It is not established by proof that the merchandise is, in fact, a hybrid. Assuming *arguendo* that it is a hybrid, as defendant asserts that it is, the issue raised by defendant is whether this fact alone, absent other proofs, removes the merchandise from *eo nomine* tariff classification. In our opinion, it does not.

Modern botanical science has concentrated on the improvement of species and varieties through hybridization. This is matter of common knowledge, of which judges are not unaware. Farmers, and many other people, know about hybrid corn. Gardeners are familiar with hybrid roses and other hybrid plants. To suggest that hybrid corn is not corn, botanically, or a hybrid rose is not, botanically, a rose, would probably surprise and puzzle both scientists and laymen.

But we do not have to decide whether hybrid corn, roses, or pimientos are or are not, in a botanical sense, corn, roses, or pimientos. We are not called upon to decide, now, whether hybrid corn is corn in the tariff sense, or a hybrid rose is a rose in the tariff sense. If this merchandise is, in fact, pimientos in the tariff sense, we hold that the selective inbreeding of species, or varieties, which constitutes hybridization, does not *ipso facto* remove the pimientos from *eo nomine* tariff classification as such.

This leaves for our consideration the chief issue, which is whether or not these vegetables are pimientos for tariff purposes.

The label description of the merchandise is "Hybrid Chile Pimientos." It is alleged that this description was required by the United States Food and Drug Administration. Whether or not this is so, characterization of imported merchandise by governmental agencies for other than tariff purposes does not determine tariff classification. *United States* v. *Mercantil Distribuidora et al.*, 43 C.C.P.A. (Customs) 111, C.A.D. 617.

The record is fairly clear that this merchandise is bought and sold, in the usual course of commerce, as pimientos (exhibit 3) ; that it

is used as pimientos are used (R. 26) ; that it is red, like a pimiento (R. 55, 58) ; that it can be eaten as a pimiento is eaten, that is, it is tolerable in the mouth, and tastes more like a pimiento than like a chile (R. 21, 42, 57, 62) ; that the texture of the vegetable flesh resembles that of a pimiento (R. 67).

*Eo nomine* meaning, established when a tariff act was enacted, embraces subsequently developed variations which come within that meaning. In *Davies Turner & Co.* v. *United States*, 45 C.C.P.A. (Customs) 39, C.A.D. 669, our appeals court said:

The meaning of *eo nomine* provisions is to be determined as of the date of enactment but, when so determined, that meaning will embrace all subsequently created articles which fall within it. Tariff acts, therefore, are made for the future in the sense that they embrace articles not in existence at the time of enactment, but the meaning of words used in such acts is fixed at the time of enactment and does not fluctuate as the meaning of words might subsequently vary. [Pp. 41, 42.]

What, then, was the meaning which Congress intended, in 1930, in making *eo nomine* provision for pimientos?

The first *eo nomine* provision for pimientos was in the Tariff Act of 1922. Previously, imported canned pimientos, described as "pimientos morrones," had been judicially classified as canned or preserved vegetables. *Austin, Nichols & Co.* v. *United States*, 6 Ct. Cust. Appls. 9 (1915).

In the 1922 act, *eo nomine* provision was for "whole pimientos, packed in brine or in oil, or prepared or preserved in any manner," and this was inserted in the paragraph for "Spices and spice seeds." Tariff Act of 1922, paragraph 779.

Congressional restriction of the 1922 *eo nomine* provision to *whole* pimientos and its location in the paragraph for spices, viewed in conjunction with the prior judicial classification of pimientos as vegetables, gave rise to litigation in order to determine how pimientos that were not whole should be classified under the 1922 act. Considering what Congress intended by the tariff term "whole pimientos," our appeals court said, in *Von Bremen, Asche & Co.* v. *United States*, 12 Ct. Cust. Appls. 407 (1924) :

If Congress had intended by the new provision to cover parts of pimientos as well as whole ones, it were easy to have said so. It will be presumed to know that such parts of pimientos as are here involved would be dutiable as vegetables prepared or preserved under the opinion of this court in the Austin, Nichols case, and if it intended to exclude the same from the effect of that decision apt and unambiguous language was at hand with which to express that intent.

The view most favorable to the Goverment as to the meaning of the term "whole pimientos" is that it is ambiguous, and so conceding, without admitting, the importer is entitled to the benefit of the doubt as to its interpretation.

We feel clear, however, that the term "whole pimientos" does not include the pimientos here which have been deprived of their skin, core, seeds, and part of the pulp, and thereby reduced in weight at least 30 per cent, perhaps more. [P. 410.]

Subsequently, in *La Manna, Azema & Farnan* v. *United States*, 14 Ct. Cust. Appls. 289 (1926), the court gave judicial effect to a proved commercial meaning for "whole" pimientos, under the 1922 act.

The Summary of Tariff Information, 1929, prepared for Congress in connection with the drafting and enactment of the Tariff Act of 1930, had this to say about classification of pimientos:

*Pimientoes* have been held by the Court of Customs Appeals to be vegetables within the meaning of the provision for vegetables in paragraph 773. The court said that it must be presumed that the Congress knew that the court had held pimientoes to be vegetables under the tariff act of 1909 (6 Ct. Cust. Appls., 9) and that it was inferable that, had the Congress intended them to be otherwise dutiable, it would have said so in subsequent tariff acts. *Pimientoes* which had been roasted, skinned, and cored, reducing their weight at least 30 per cent, and canned, were held not to be whole pimientoes under paragraph 779, tariff act of 1922, but to be dutiable as prepared vegetables, paragraph 773. (12 Ct. Cust. Appls., 407.) In a later case, involving similar pimientoes, in which evidence was introduced to show that the provision for whole pimientoes in paragraph 779 includes whole pimientoes such as those the subject of the court's decision, the Court of Customs Appeals affirmed the decision of the Customs Court, holding such merchandise properly dutiable as whole pimientoes, paragraph 779. (14 Ct. Cust., Appls., 289.) [P. 1458; to the same effect, also, p. 1512.] [Italics quoted.]

The 1929 summary further stated, as to pimientos, as follows:

WHOLE PIMIENTOS, PACKED IN BRINE OR IN OIL, OR
PREPARED OR PRESERVED IN ANY MANNER

**Description and uses.**—Pimientos are sweet red peppers, a variety of the capsicum family. For the preparation of the canned or preserved pimiento, the skin is removed either by charring over a fire, or by boiling in oil; the stem end is then cut off and the core and seeds removed. Both in Spain and the United States the bulk of the pimientos are then canned in a weak brine solution. In general two grades of canned pimientos are made, (1) unbroken peeled and cored pimientos, and (2) broken and torn pimientos obtained in roasting, peeling, and coring. Canned pimientos are used in salads, in soups, as a vegetable, and for the manufacture of pimiento (or pimento) cheese. [P. 1508.]

With this information before it, Congress made two important changes in the *eo nomine* provision for pimientos. In the 1930 act, the restrictive word "whole" was eliminated and the *eo nomine* provision was taken out of the paragraph for spices and placed in the paragraph for vegetables.

The Summaries of Tariff Information (1948), prepared pursuant to a resolution of the Committee on Ways and Means of the House of Representatives, adopted July 25, 1947, refers to the 1930 *eo nomine* provision for pimientos, as follows:

PIMIENTOS, PACKED IN BRINE OR OIL, OR OTHER-
WISE PREPARED OR PRESERVED (PAR. 775)

This summary covers pimientos packed in brine or in oil, or prepared or pre-
served in any manner, which for all practical purposes are the familiar
canned pimientos. Only very small quantities of pimientos are put up in any
other manner. Pimientos are a type of sweet pepper grown principally for
canning: they are used in the manufacture of pimiento cheese, for stuffing
olives, for making sandwich spreads, and for lending color and flavor to salads,
soups, and other preparations. About 85 percent of the output is packed in
small containers for home use, and the remainder in large containers for hotels
and food processors.

The record supports our finding that these pimientos are sweet
(not hot) peppers, that they are canned, that they are used at least
for several of the purposes set forth in the summaries, that they are
commercially traded in as pimientos, and that they are, in fact,
pimientos in the tariff sense of the *eo nomine* provision of paragraph
775.

In *Crosse & Blackwell Co.* v. *United States*, 36 C.C.P.A. (Customs)
33, C.A.D. 393, cited by plaintiff, our appeals court held that "tur-
pentine mangoes," a variety of mangoes that had been peeled, pitted,
sliced, and pickled in brine, should be classified *eo nomine* as mangoes,
rather than under the not-specially-provided-for fruit in brine pro-
vision. Pertinent to the issue here, the court there said:

Paragraph 746, *supra*, fixes the duty on "mangoes." This language is not
restricted to any particular variety of mango, or to fresh mangoes, or to entire
mangoes. It includes mangoes in any condition, so long as they are mangoes.
[P. 38.]

We need not go into the proofs adduced as to the method of process-
ing the subject pimientos. They are canned; and the old issue, as to
whether or not pimientos are whole, was eliminated by Congress in
the 1930 act provision which we are here called upon to construe.

We hold that the *eo nomine* provision for pimientos in paragraph
775 includes these pimientos and that they are dutiable at the specific
rate of 6 cents per pound.

Inasmuch as the collector's classification called for duty at an ad
valorem rate, the weight of the dutiable merchandise was not mate-
rial. Plaintiff claims, by protest amendment, that specific duty (6
cents per pound) is assessable on the net weight of the merchandise,
minus the weight of the liquid in the canned product, citing *Von
Bremen, Asche & Co.* v. *United States*, 57 Treas. Dec. 679, T.D.
44000; *Von Bremen, Asche De Bruyn,* v. *United States*, 64 Treas.
Dec. 269, T.D. 46643; *Peabody* v. *United States*, 13 Ct. Cust. Appls.
80; *Foo Lung & Co.* v. *United States*, 20 C.C.P.A. (Customs) 316;
and other cases.

In the second *Von Bremen* case, *supra*, the method of packing the pimientos there under consideration was described by the court, and the applicable law applied, as follows:

> * * * That they are placed in cans, enough pimientos being put in the can to extend considerably over the top of the can, without drainage. That they then are placed on a closing machine on which the top of the can presses the pimientos down in the can and the can is closed. That the excess water which is in the pimientos is left in the can and afterwards the cans are placed in a sterilizer.

> *         *         *         *         *         *         *

> This court held, in the case of *Von Bremen, Asche & Co.* v. *United States*, T.D. 44000, 57 Treas. Dec. 679, that where a paragraph of the statute provides for the assessment of a specific rate of duty upon a commodity therein named, based upon its weight, such rate cannot be applied to any foreign substance in which the commodity is packed, which foreign substance has no commercial value. Following that decision a number of cases have arisen wherein the foregoing ruling has been applied, all based upon the theory that the foreign substance in which the commodity had been packed was customarily discarded as being of no use or value. The controlling factor in these cases appears to have been that in each instance the respective paragraph of the tariff act had provided for a specific duty at a certain amount per pound on the actual weight of the commodity, no reference having been made to the immediate covering, coupled with the fact that in each case the covering or foreign substance, be it water, sirup, oil, or what not, was habitually discarded when it came to the ultimate use of the commodity. [P. 270.]

Mr. Horace H. Selby, consultant to Marine Products Co., plaintiff herein, testified that he had visited the packing plant in Ensenada, where these pimientos were packed, and that he was familiar with the packing method. (R. 54, 55.) He stated that:

> * * * the entire berry or fruit was rolled down a long incline through a flame area, which tended to roast the berry until the outer very thin skin could be removed easily by washing. After this, the pimientos were washed; cut so that the stems were removed, and so that the inner portion of the seed mass was removed; the material was drained; placed in the cans. The cans were exhausted—that is preheated by steam; the cans were sealed; autoclaved or put in pressure retorts for cooking; taken out; cooled; labeled; packaged in boxes.

Mr. Selby also examined canned pimientos, after they had been imported into the United States, and found there was liquid in the cans. He measured this liquid content, and it was 1.37 ounces by weight, on average, in a 7-ounce can. (R. 58.)

The record is clear by testimony of another witness, Mr. Small, president of the plaintiff, that no liquid of any kind is added in the canning process, but that some moisture remains from the washing process; that this carryover, together with the natural liquid in the pimientos, results in some liquid being found in the cans. (R. 44.)

However, when asked by plaintiff's counsel whether this liquid is used or discarded, Mr. Small said he could not answer the question.

The record here does not show that such liquid as the cans contain is habitually discarded when the pimientos come to ultimate use. The record lacks evidence that there is in this merchandise a foreign substance that has no commercial value. Hence, plaintiff has not established the right to exclude any part of net weight from dutiable merchandise.

The protest claim for duty at the rate of 6 cents per pound under the *eo nomine* provision for pimientos in paragraph 775 is sustained. The claim that duty should be assessed on the basis of a net weight of the canned pimientos, not including the weight of the liquid or other substances in which the pimientos are packed, is overruled.

Judgment will be entered accordingly.

### CONCURRING OPINION

JOHNSON, Judge: I am in accord that this merchandise is properly dutiable under the *eo nomine* provision for pimientos, prepared or preserved, in paragraph 775 of the Tariff Act of 1930, on the ground that the record establishes *prima facie* that the imported merchandise is a variety of pimiento, having the pungency, shape, quality, and texture of pimientos. However, since the evidence does not show that this merchandise is, in fact, a hybrid, nor does the record indicate what hybridization consists of, I express no opinion as to whether or not hybridization *ipso facto* removes a commodity from an *eo nomine* classification.

I am in agreement that duty should be assessed on the net weight of the canned pimientos, not excluding the weight of the liquid or other substances in which the pimientos are packed.