UNITED STATES *v.* CORONEOS BROS. (No. 1987).[1]

1. PRACTICE—JUDGMENT ON APPEAL.
    An appellee in this court must confine himself to supporting the decision of the Board of United States General Appraisers.

2. GRAPEVINE LEAVES.
    Canned grapevine leaves, used to flavor roulades of meat and rice, which are rolled up and cooked in them, served with the roulades, sometimes eaten and sometimes not, are not vegetables, prepared, under paragraph 200, tariff act of 1913. The decision of the Board of United States General Appraisers sustaining the claim of the protest for classification under paragraph 385 as a nonenumerated manufactured article is affirmed.

United States Court of Customs Appeals, November 25, 1919.

APPEAL from Board of United States General Appraisers, G. A. 8247 (T. D. 37971).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Samuel Isenschmid,* special attorney, of counsel), for the United States.
*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellees.

[Oral argument Oct. 15, 1919, by Mr. Hanson and Mr. Tompkins.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES,. and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The importation here in question consists of grapevine leaves from Greece. These leaves are selected, placed in water, and packed in tins, which are then hermetically sealed and the contents sterilized. They were assessed for duty at 25 per cent ad valorem under paragraph 200 of the act of 1913 as vegetables, prepared. The protest claims free entry under paragraph 552 as a crude vegetable substance, under paragraph 477 as a drug not advanced in value or condition at 10 per cent ad valorem, under paragraph 27 as a drug advanced in value or condition at 15 per cent, under paragraph 215 as vegetables in their natural state, or at 10 or 15 per cent under paragraph 385 as a nonenumerated unmanufactured or manufactured article.

The Board of General Appraisers sustained the contention of the importer that the merchandise is not dutiable under paragraph 200

---

[1] T. D. 38198 (37 Treas. Dec., 212).

as vegetables, prepared, but overruled the contention of the importer under his claims for free entry and held the merchandise dutiable at 15 per cent under paragraph 385 as a nonenumerated manufactured article.

The Government appeals, not contesting the findings which exclude the article in question from the drug paragraph, from paragraph 552 as a crude vegetable substance, and from paragraph 215 as vegetables in their natural state, but resting the case upon the contention that the goods should be held dutiable under paragraph 200.

The briefs contain some discussion on both sides of the question as to the correctness of the board's holding that the merchandise had been so processed as to exclude it from paragraph 552 as a crude vegetable substance and from paragraph 215 as vegetables in their natural state.

The importer testified that the grapevine leaves are packed in small cans and when they are sealed they are sterilized for about two hours.

We are not prepared to say that the board erred in following Habicht *v.* United States (1 Ct. Cust. Appls., 10; T. D. 30772).

The question as to the effect of hermetically sealing and sterilizing this product is in part one of fact, and as the importer has not appealed from the decision of the board, and the Government contends for its correctness, in this particular we are not disposed to disturb the holding. Even if the importer's claim under this paragraph should be sustained, no relief could be granted in this court. United States *v.* Von Oefele (4 Ct. Cust. Appls., 284; T. D. 33492).

The real question presented on this appeal is whether the merchandise in question is dutiable, either directly or by similitude, under paragraph 200 as vegetables, prepared. Paragraph 200 provides for "vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared in any way." As before stated, the grapevine leaves here in question are packed in tin cans hermetically sealed and sterilized. They are not packed in salt, brine, or oil, but are to the extent stated prepared.

The question upon which the case turned below and upon which it should be decided here is, we think, whether the grapevine leaves are vegetables within the meaning of that term. This has involved an examination of the testimony and of the finding of the board upon the facts. These leaves are used, so far as the evidence in the case shows, only by Greek restaurants. They are used in the preparation of roulades, which consist of round balls of chopped meat and rice. The meat and rice are prepared and one or more of the grapevine leaves used. The meat and rice combination is placed upon one or more of these leaves and then rolled into the form of a ball, placed in

boiling water, and cooked. The roll is then taken out and served in this form.

It is a controverted question in the case as to whether the leaves are eaten to any great extent, but a careful examination of the testimony throughout convinces us that the finding of the board upon this question of fact is sustained by the testimony. Certainly it is not so opposed to the testimony given by the witnesses and to justifiable inferences as to warrant us in overturning the decision. The board found as follows:

The evidence in the case discloses that these leaves are sometimes eaten by those who are served with the meat which was in them, and are sometimes rejected and thrown away. Just what percentage of the people eat them we are unable to determine. We gather that more are thrown away than are eaten, and that they are served only in Greek restaurants and largely to the Greeks patronizing those restaurants. There is nothing to convince us that they are eaten for the nourishment that is in them, but rather as a relish or condiment, because it appears that they do give a flavor to the food. Their use appears to be that of any spice or other pungent material and only in small quantities to give a taste or relish to the food.

The board was of the opinion that this finding brought the case within United States v. Wallace (4 Ct. Cust. Appls., 142; T. D. 33413). It was said in that case, after quoting the Supreme Court decisions:

The foregoing decisions indicate that in the tariff acts the word "vegetables" has not been employed in a strictly botanical sense, but rather has been applied to those articles of food which constitute in common acceptation the vegetable part of a repast. These are such articles of food as commonly grow in kitchen gardens. This definition excludes horseradish, because that article, while botanically a vegetable, is not commonly given that name when it appears upon the dinner table, and in use is not a food at all but only a condiment.

The board held that the same might be said of the leaves in question here, and the testimony persuaded the board that when eaten at all they were eaten as a condiment. There was testimony in the case tending to show that these leaves in the cooking imparted some flavor to the meat and rice, which, it is obvious, comprised the greater part of the repast prepared. The use is similar to that of any condiment so far as it is intended to impart its flavor. There was no mixture, but the meat and rice were in a sense seasoned by this method.

The board also finds, as above stated, that they were used as a relish, not for nourishment. Within this finding the case would seem to be very similar to the Wallace case.

The Government cites the case of Austin, Nichols & Co. v. United States (6 Ct. Cust. Appls., 9; T. D. 35249). That case involved sweet red peppers, and it was said:

The testimony upon which the importers rely fairly establishes that the merchandise in controversy is used as a garnish, but that it goes so far as to prove that the peppers are used either exclusively or chiefly for that purpose can not, we think, be conceded.

It is also stated in the case that "the sweet red pepper is not only recognized as a vegetable by standard works on cooking, but recipes for its preparation as a food are" given.

It was further conceded by the appellants "that the sweet green peppers are eaten as a food and that they are a well-recognized variety of vegetable." And it was said:

The sweet red pepper, as shown by the evidence and the authorities, is nothing more and nothing less than the ripened green pepper, and as there is nothing in the evidence which would justify a finding that the ripening process so alters the green pepper as to make it inedible or unacceptable as a food, we do not see how it can be concluded that the pepper has ceased to be a vegetable simply because it has ripened and changed its color.

That case, we think, is not controlling of the present. The decision of the board is *affirmed.*