BROWN & CO. ET AL. *v.* UNITED STATES (No. 2686)[1]

SEED—DEAD LOTUS NUTS.

Lotus lily seed or nuts, their germs having been "dug" out in preparing them for use as food, are no longer seed, having lost that which made them seed; and the proviso of paragraph 762, Tariff Act of 1922, that it "shall include such seeds whether used for planting or for other purposes," does not embrace them. They were properly assessed as prepared vegetables under paragraph 773.

United States Court of Customs Appeals, May 1, 1926

APPEAL from Board of United States General Appraisers, Abstract 49827

[Affirmed.]

*Allan R. Brown* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Reuben Wilson*, special attorney, of counsel), for the United States.

[Oral argument March 31, 1926, by Mr. Brown and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of dried, split, nongerminative seeds of the lotus lily. It was assessed for duty by the collector at 35 per centum ad valorem as prepared vegetables, under paragraph 773 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 773. Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; sauces of all kinds, not specially provided for; * * *

[1] T. D. 41588.

It is claimed by the appellant that the merchandise is properly dutiable as flower seeds at 6 cents per pound under paragraph 762 of the Tariff Act of 1922, which reads as follows:

PAR. 762. Other garden and field seeds: Beet (except sugar beet), 4 cents per pound; cabbage, 10 cents per pound; canary, 1 cent per pound; carrot, 4 cents per pound; cauliflower, 25 cents per pound; celery, 2 cents per pound; kale, 6 cents per pound; kohlrabi, 8 cents per pound; mangelwurzel, 4 cents per pound; mushroom spawn, 1 cent per pound; onion, 15 cents per pound; parsley, 2 cents per pound; parsnip, 4 cents per pound; pepper, 15 cents per pound; radish, 4 cents per pound; spinach, 1 cent per pound; tree and shrub, 8 cents per pound; turnip, 4 cents per pound; rutabaga, 4 cents per pound; flower, 6 cents per pound; all other garden and field seeds not specially provided for, 6 cents per pound: *Provided,* That the provisions for seeds in this schedule shall include such seeds whether used for planting or for other purposes.

It appears from the record in the case that the imported merchandise is known as lotus seed and lotus nuts. The seed or nuts are taken from the flower of the lotus plant. They are dried, split, and the embryos "dug" out. It appears that they have been so processed in order that they may be used as a food, and they are used for that purpose. Lee B. Lok, one of the witnesses for the importer, in regard to the uses of the importation, testified as follows:

\* \* \* \* \* \* \*

Q. Will you tell us how they are used?—A. We make soup out of it, and also people buy them as medicine.

Q. Do you use them as a side dish in the same way you do potatoes, corn, tomatoes, cabbage, and things of that kind?—A. No, sir.

\* \* \* \* \* \* \*

Another witness for the importer testified substantially to the same effect.

The trial court overruled the protests and an appeal was taken to this court.

It is contended by counsel for appellants that, on account of the proviso clause contained therein, paragraph 762, *supra,* covers the seeds in question, regardless of the fact that the germinative properties have been removed in the preparation of the seed for use as a food. It is also claimed that the provision for flower seeds contained in the paragraph covers "all kinds of flower seeds in any form or condition, unless a contrary commercial understanding is shown."

Counsel argues that the established rule in the interpretation of tariff statutes that where a general term is used without qualification, in the absence of commercial testimony to the contary, such term must be held to include, as stated by this court in *Schade & Co.* v. *United States,* 5 Ct. Cust. Appls. 465, T. D. 35002, "every kind and class of merchandise properly referable thereto, either directly or as a species the genus of which is embraced within the particular tariff nomenclature."

Many other decisions of this court which hold substantially to the same effect are cited by counsel.

It was conceded by counsel for the appellants, during the oral argument of the case in this court, that if the merchandise is not properly dutiable as seeds under paragraph 762, the collector's classification should be approved.

It is claimed by counsel for the Government that the merchandise in question was properly assessed by the collector; that the germinating properties of the seed having been removed in the process of preparing them for use as a food, they have ceased to be seed within the ordinary meaning of that term, and, as they are used as a vegetable in the preparation of soup, they were properly held by the court below to be dutiable under paragraph 773, *supra,* as prepared vegetables.

Paragraph 762 provides for " other garden and field seeds:  *  *  *";  then follows an enumeration of many seeds which respond to the heading "garden and field seeds," including flower seeds.  Immediately following these enumerations the paragraph contains the following provisions: "*  *  *  all other garden and field seeds not specially provided for, 6 cents per pound: *Provided,* That the provisions for seeds in this schedule shall include *such seeds whether used for planting or for other purposes.*"  (Italics ours.)

Manifestly, it was intended by the Congress to provide in this paragraph for garden and field *seeds,* whether *such seeds* were used for planting or for other purposes.  Therefore, the first question to be determined is: Does the merchandise in question, in the condition in which imported, answer to the common understanding of the meaning of the term seeds?  If it does, it is included within the paragraph as flower seed, regardless of the fact that it is used for purposes other than planting.

The word seed is defined as follows:

Seed, *n.* 1. *Bot.* The fertilized ovule with an embryo formed within it; an independent reproductive body containing, when cast off by the parent, a new plant or embryo that, on germination, gives rise to a plant like that from which it came.  *  *  *

3. That from which anything springs; a first principle; a principle of production; source; germ: usually plural.  Funk & Wagnalls New Standard Dictionary.

Does the merchandise in question come within the dictionary definition of seed?  We think not.  The germinating properties which give character to seed have been removed by processing.  The merchandise does not consist of reproductive structures capable of propagating the species.  By a process of manufacture the seeds have been converted into different articles of commerce.  They are no longer seeds, for they have been deprived, designedly, of that which made them seeds.  The proviso does not, we think, extend the

application of the paragraph to articles other than seeds. By its terms it is limited to the seeds provided for in the preceding part of the paragraph; and its evident purpose is to require that such *seeds* be assessed for duty under the appropriate provision of the paragraph, regardless of the use to which they may be put. If the merchandise in question were seeds of the kinds provided for in the paragraph, it might with reason be argued that the precise form of the seed has no legal significance. Under such circumstances the cases cited by counsel would be of importance. *Schade & Co.* v. *United States,* 5 Ct. Cust. Appls. 465, T. D. 35002; *Neuman & Schwiers Co. et al.* v. *United States,* 4 Ct. Cust. Appls. 64, T. D. 33310; *Brown & Co.* v. *United States,* 6 Ct. Cust. Appls. 415, T. D. 35977.

This court held in the case last cited that soya beans, cooked and salted but not processed to such an extent as to "alter their status as beans or change or modify them sufficiently to prevent their identification as soya beans," were free of duty under the *eo nomine* provision therefor contained in paragraph 606 of the tariff act of 1913. It should be noted, however, that the paragraph under consideration in that case provided in general terms for soya beans. Within the common understanding soya beans includes such articles, whether they retain their germinating properties, or whether they have been prepared for use as food. They retain their character as beans, even though by a process of preparation they have lost their status as seed. As plainly indicated by the court in that case, had the beans there in question been so processed as to have lost their character and status as beans, a different classification would have been necessary.

Without extending this opinion, we conclude that the merchandise in question does not consist of seeds within the meaning of the provisions of paragraph 762, *supra.*

In view of the fact that the imported articles are prepared for use as a food and are used as vegetables, "forming the basis of soup," they were properly classified by the collector under paragraph 773, as vegetables prepared. *Nix* v. *Hedden* 149 U. S. 304.

The judgment is *affirmed.*