(C. D. 734)

R. J. ROESLING & CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 15, 1943)

*Harper & Harper* (*Walter I. Carpeneti* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly* and *Frank X. O'Donnell, Jr.*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff seeks to recover all or a portion of the duty assessed on merchandise invoiced as "Pracaxy seeds" which were entered free of duty under paragraph 1727 of the Tariff Act of 1930. The appraiser's advisory classification in red ink on the invoice is "Palm nut kernels" under paragraph 1727 but that advisory classification has been stricken out by lines in red ink and the collector assessed duty thereon at 8 cents per pound under the provision for "Other garden and field seeds: * * * tree and shrub" under paragraph 764.

A number of claims are made in the protest but in his brief counsel for the plaintiff abandoned all except the following: that the merchandise is free of duty as "vegetable substances, crude or unmanufactured, not specially provided for" under paragraph 1722 or as "seeds and nuts, not specially provided for, when the oils derived therefrom are free of duty" under paragraph 1727; that the merchandise is dutiable at 10 per centum ad valorem as nonenumerated unmanufactured articles under paragraph 1558; that the merchandise is dutiable at 6 cents per pound as "garden and field seeds not specially provided for" under paragraph 764, which rate was reduced to 3 cents per pound under the trade agreement with the Netherlands (T. D. 48075).

The first witness called by the plaintiff was Mr. Norvert F. Roesling who has been connected with the importing firm for 18 years. He testified that the business of the firm is importing vegetable oils and oil-bearing seeds; that he purchased the merchandise herein involved, handled it and shipped it to the Berkeley Oil and Meal Co. and that it was his first importation of such merchandise; that he took samples out of the shipment and gave part of them to his attorney.

Samples in a paper bag, which the witness recognized as having been taken out of the shipment, were admitted in evidence and marked exhibit 1. The witness made a demonstration to show that the samples contained oil by pressing his thumb nail into the meat of one of the exhibits, which showed some oil on his thumb nail.

On cross-examination the witness testified that he could not distinguish between a seed and a nut. He said, "I more or less treat them as the same. When we use them for oil crushing or oil extraction a seed is a nut and a nut is a seed, in our estimation." He testified further that the articles in exhibit 1 have an outside shell and demonstrated by removing the outside covering from the meat of one of the exhibits. The shell so removed was marked in evidence as exhibit 1-A. The witness testified further that the merchandise is commonly known as pracaxy seed; that he did not know whether or not an outside pod covered the seed when growing on the tree; that he imported the shipment to try to find out something about the merchandise.

The next witness called by the plaintiff was Mr. Edwin S. McElligott who is a chemist with 30 years of experience. He testified that his duties consisted of all kinds of laboratory work including analyzing for oil content of vegetable products and testing seeds for germinating qualities; that he received from Harper & Harper samples of the imported merchandise identical with exhibit 1; that he tested part of the samples for the amount of the oil contained therein and attempted to germinate the remainder of the samples; that in making the germination test he placed the seeds between blotters and kept them moist and at a temperature of 25° to 30° C. for 10 days; that such is

the usual test for germination of most seeds but none of the seeds germinated; that he extracted the oil from the remainder of the samples and found that the oil content was 39.08 per centum; that he found references to the merchandise on page 34 in the authority "Vegetable Fats & Oils" by Jamieson; that the older references did not name pracaxy but it is found in the "Chemical Extracts," volume 23, No. 5, of March 1929, which is a standard work.

On cross-examination the witness testified that he tested the samples for germination about 4 years after entry; that the length of time might have some effect on the germinating properties; that he did not remove the husks when he made the germinating test; that, as far as he knew, he agreed with the statement in Jamieson's book that pracaxy oil is obtained from a bean or seed; that normally nuts break their own shell in germinating; that he applied the same germinating test to the samples as he applies to seeds.

On redirect examination the witness testified that the delay of 4 years in applying the germinating test would not destroy the germinating qualities 100 per centum.

The case was then continued for further testimony and when the hearing was resumed the plaintiff introduced a translation of the title page of volume 15, part 2, of "Flora Brasiliensis" and also pages 262 and 263, which were admitted in evidence and marked exhibits 2 and 2-A.

The defendant called Miss Alice Eastwood who is a botanist of long experience. The witness testified that the work "Flora Brasiliensis" is recognized as an authority by everyone; that she had seen pracaxy seed; that botanically it is called the seed of the *penta-clethra*; that a seed is usually grown in some kind of a receptacle; "sometimes we call it a seed or a pod, sometimes we call it fruit"; that the thing inside is the seed; that leguminous plants have seeds; that a nut is the product of a single flower; that a walnut is a nut but a peanut is not a nut but is a pea pod with a seed in it. The concluding question and answer on direct examination was—

Q. Is this article that I withdrew from Exhibit 1 a nut?—A. That is a seed; it is a seed of the pentaclethra. It is leguminous and from a tree that is similar to the acacia; it is a seed.

On cross-examination the witness testified as follows:

X Q. Miss Eastwood, when you refer to something as a seed, do you have certain things in mind?—A. Certainly; I know exactly what a seed is. A seed, botanically has an embryo inside of it which produces a young plant when it is planted.

X Q. That is a vital element of a seed, an embryo?—A. Certainly; it is most important.

X Q. Miss Eastwood, you referred to a nut as being the result of a single flower; is that true?—A. Yes; it is the product of a single flower. For instance, a Brazil nut is not a nut. A Brazil nut is a seed because in a Brazil nut there are several in one enclosure. I mean of course botanically. When we buy them we call them nuts.

X Q. When you refer to them as being seeds, you are referring to them as being seeds botanically?—A. Yes.

X Q. You realize the common meaning differs from the botanical meaning?—A. Yes.

\* \* \* \* \* \* \*

X Q. You mentioned the fact you do not consider the peanut a nut?—A. No, it is not.

X Q. That is botanically?—A. Certainly; it is a seed.

X Q. Your testimony here was on the basis of botanical meanings?—A. Oh! yes.

X Q. You mentioned the fact that the pentaclethra is a leguminous plant.—A. Yes.

X Q. Do you have any common name for "leguminosae"?—A. We usually speak of the pea family as leguminous.

\* \* \* \* \* \* \*

X Q. And you refer to this as the pracaxy seed from the pentaclethra?—A. Yes, that is the tree with a very large pod. These are large seeds.

Collective exhibit 2–A, which is a translation of certain pages from the authority entitled "Flora Brasiliensis," shows that the merchandise therein described is a habitat of Brazil and other tropical countries. The exhibit gives a minute description of the tree, its leaves, flowers, and fruit in botanical terms. The description of the tree upon which the imported commodity grows is as follows:

Low or tall tree, wood very hard, branchlets thick, glabrous, leaves about a foot in length, rigid, like those of Parkiae biglobosae; main petiole rather thick, canicular above, slightly ferrugineous pubescent.

The merchandise was classified under the provision for tree and shrub seeds in paragraph 764. The description and use of such merchandise is given in the Summary of Tariff Information, 1929, on page 1388, as follows:

Description and uses.—Tree and shrub seed are used for growing seedlings to be used in growing or propagating forest, fruit, nut, or ornamental trees, vines, and shrubs.

The evidence shows that the articles in this case will not germinate and the question arises as to whether or not they are seeds such as are provided for in paragraph 764. It has been held in numerous decisions that seeds which will not germinate are not "seeds" within the meaning of the provisions of the paragraph and its predecessors in former tariff acts. *Brown & Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 96, T. D. 41588; *United States* v. *Albers Bros. Milling Co. et al.*, 19 C. C. P. A. (Customs) 88, T. D. 45226; *S. B. Penick & Co.* v. *United States*, 40 Treas. Dec. 430, Abstract 44395; *W. J. Bush & Co.* v. *United States*, 43 Treas. Dec. 321, T. D. 39569, G. A. 8630; *Albers Bros. Milling Co.* v. *United States*, 2 Cust. Ct. 194, C. D. 122; *Song Kee & Co.* v. *United States*, 7 Cust. Ct. 111, C. D. 548. In harmony with the decisions above cited, we find that the imported articles are not seeds within the meaning of the provisions in para-

graph 764 and hold that they were incorrectly classified by the collector.

The next question for determination is, which paragraph among those named in the protest most specifically describes the merchandise? The plaintiff claims free entry under paragraph 1722 or 1727, or that the merchandise is dutiable at 10 per centum ad valorem under paragraph 1558 as nonenumerated unmanufactured articles. Paragraphs 1722 and 1727 read as follows:

PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

PAR. 1727. Oil-bearing seeds and nuts: Copra, hempseed, kapok seed, palm nuts, palm-nut kernels, tung nuts, rapeseed, rubber seed, perilla and sesame seed; seeds and nuts, not specially provided for, when the oils derived therefrom are free of duty.

The merchandise has all of the earmarks of a crude vegetable substance, but paragraph 1722 is limited by the phrase "not specially provided for" which requires that other paragraphs need to be investigated before that paragraph can be considered.

The last provision in paragraph 1727 for "seeds and nuts" is the only one in that paragraph under which the merchandise herein involved could possibly fall and that provision is limited by the words "when the oils derived therefrom are free of duty." Paragraphs 1730, 1731, and 1733 provide free entry for certain oils but the oil of the pracaxy seed does not fall within any of them. The only other paragraph covering oils which are free of duty to which our attention has been directed is paragraph 1732, reading as follows:

PAR. 1732. Oils, expressed or extracted: Croton, palm, perilla, and sweet almond; olive, palm-kernel, rapeseed, sunflower, and sesame oil, rendered unfit for use as food or for any but mechanical or manufacturing purposes, by such means as shall be satisfactory to the Secretary of the Treasury and under regulations to be prescribed by him; tung oil; and nut oils not specially provided for.

Pracaxy oil is not specifically named in the paragraph and the only general provision for oils is limited to "nut oils." Therefore, if the goods invoiced as "pracaxy seeds" are nuts, since they are oil bearing, they would be included within the provisions of paragraph 1727. The word "nut" is defined in Webster's New International Dictionary as follows:

nut. 1. A hard-shelled dry fruit or seed having a more or less distinct separable rind or shell and interior kernel or meat; also, the kernel or meat itself;—loosely used, and including many kinds, as almonds, peanuts, brazil nuts, etc., not botanically true nuts * * *.

2. Bot. An indehiscent, polycarpellary, 1-seeded fruit, with a woody pericarp developing from an inferior syncarpous ovary, as the acorn, hazelnut, chestnut, etc.; a glans.

The samples in exhibit 1 meet the common description of a nut in the first paragraph above copied. The articles have a distinct rind or shell and an internal kernel or meat. When the shell of one of the samples was crushed and removed from the kernel by witness Roesling when on the stand, the judge presiding at the trial said "it made a noise like the crackling of a peanut shell, or something of the sort." Defendant's witness Alice Eastwood stated that the common meaning of the word "nut" differs from the botanical meaning, which seems to accord with the description in the dictionary wherein it is stated that the word includes many kinds not botanically true nuts, such as almonds, peanuts, Brazil nuts, etc.

Counsel for the plaintiff urges in his brief that the testimony of defendant's witness Alice Eastwood with respect to the botanical meaning of the word "nut" is not controlling because where the common meaning differs from the scientific meaning, the common meaning controls, citing *United States* v. *Two Hundred Chests of Tea*, 9 Wheat 189 [428], 6 L. ed. 128; *American Felsol Co. et al.* v. *United States*, 25 C. C. P. A. (Customs) 367, T. D. 49454; *Bakelite Corporation et al.* v. *United States*, 16 Ct. Cust. Appls. 378, T. D. 43117. In the latter case, the court said:

The word [product], as used in the statute, must be given its ordinary meaning, no commercial designation being attempted to be shown. If the testimony of the witnesses for the importers may be construed as simply expressing their interpretation of the statute, then such testimony is immaterial; if their statements may be taken as an attempted statement of the scientific meaning of the word "products," it is sufficient to note that tariff acts are drafted, "not in the terms of science, but in the language of commerce, which is presumptively that in common use." *Meyer & Lange* v. *United States*, 6 Ct. Cust. Appls. 181, T. D. 35436.

Counsel for the defendant urges that the imported merchandise is not covered by the provision for "seeds and nuts, not specifically provided for, when the oils derived therefrom are free of duty" in paragraph 1727, citing *Prunty Seed & Grain Co.* v. *United States*, 57 Treas. Dec. 453, T. D. 43926. The following excerpt from that decision is quoted in defendant's brief:

The fallacy of this contention is that niger-seed oil is not free of duty under the present law [1922]. Certainly paragraph 1626 does not provide for it. In our opinion that paragraph provides only for the seeds and nuts therein named and for other seeds and nuts the oil from which is *specifically* provided for free of duty. An example of this latter class is found in the provision in paragraph 1632 for tung oils and nut oils not specially provided for. [Italics not quoted.]

The merchandise under consideration in that case was niger seed and the question involved hinged on whether or not niger-seed oil was free of duty under paragraph 1632 of the Tariff Act of 1922, which is the predecessor of paragraph 1732 of the Tariff Act of 1930. There was no provision in that paragraph for oil expressed or extracted from *seeds* and the court held that oil expressed or extracted from niger

seed was not free of duty because it was not named in that paragraph and that consequently niger seed was not free of duty under the provision in paragraph 1626 for "Oil-bearing seeds and nuts: * * * seeds and nuts, not specially provided for, when the oils derived therefrom are free of duty." Paragraph 1732 of the present act is not identical with paragraph 1632 of the act of 1922, but both contain the provision for "nut oils not specially provided for" which the court quoted as an example of one of the kinds of oils which were "specifically" provided for.

Congress manifestly intended to provide free entry in paragraph 1732 for expressed or extracted nut oils which are not named in that or some other paragraph. Therefore, oil-bearing nuts, not specially provided for elsewhere, would be free of duty under the provision in paragraph 1727 for "nuts, not specially provided for" when the oil after extraction therefrom would be free of duty under paragraph 1732. Such a conclusion is not in conflict with the construction adopted in *Prunty Seed & Grain Co.* v. *United States, supra,* the merchandise in that case being seeds which were not nuts.

According to the dictionary definition, nuts are seeds but it is obvious that all seeds are not nuts. If the term "nuts" is limited to such as grow singly in a pod or covering, as testified by witness Eastwood in showing the botanical meaning, many well-known kinds of nuts would be excluded from that term, such as chestnuts, horse chestnuts, beechnuts, etc., which grow with a number of nuts in a covering. We are of opinion that Congress did not contemplate any such a distinction.

We find that, although the imported products in this case are invoiced and are called "Pracaxy seeds," they are nuts in fact, within the common meaning of that term, and, as they are oil-bearing nuts and as the oil extracted therefrom is free of duty under paragraph 1732, we hold that such nuts are free of duty under paragraph 1727. That claim in the protest is sustained. Judgment will be entered in favor of the plaintiff.