(C. D. 1006)

BING KEE & CO. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided May 23, 1946)

Lawrence & Tuttle (George R. Tuttle and Frank L. Lawrence of counsel) for the plaintiff.

Paul P. Rao, Assistant Attorney General (Dorothy C. Bennett, Samuel D. Spector, and William J. Vitale, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a suit against the United States arising at the port of San Francisco by protest against the collector's assessment of duty on green water chestnuts imported from China at the rate of 50 per centum ad valorem under paragraph 774 of the Tariff Act of 1930 as vegetables in their natural state. Plaintiff claims that the merchandise is properly dutiable under paragraph 752 as fruits in their natural state or as fruits, prepared or preserved.

The pertinent provisions of the tariff act are as follows:

PAR. 774. Vegetables in their natural state  *  *  *  all other, not specially provided for, 50 per centum ad valorem  *  *  *

PAR. 752. Fruits in their natural state  *  *  *  or otherwise prepared or preserved, and not specially provided for  *  *  *  35 per centum ad valorem  *  *  *

At the trial Henry Luck, a Chinese-American, testified that water chestnuts are sometimes peeled and eaten raw but are more frequently used in cooking for flavoring; that they are cooked with meat or chicken and are used in soups; that they have a sweet flavor and are crispy like an apple; that they grow under water and not on trees; and that they are probably roots. The witness stated that a label introduced in evidence as defendant's illustrative exhibit 1 was a crude drawing of a water chestnut. It appears to be something like the American chestnut. The witness described the article as follows:

X Q. How would you compare the appearance of the meat of the water chestnut with the raw potato?—A.  I would say the water chestnut is a little whiter in color.

X Q. A little whiter in color, otherwise similar?—A. Yes, in some ways it is similar.

X Q. In what ways? In what ways would you say it is similar?—A. Probably appearance; that is, when we cut it it is crispy; it is the same thing.

X Q. It is similar body; is that it? The body is similar?—A. It is more like an apple. I have tasted both and I know how both taste.

The witness also testified that water chestnuts are used in chow mein; that chow mein contains noodles, bean sprouts, and meat; and that fruits, such as pineapples, apples, watermelons, lemons, and oranges, are not used in chow mein.

The sole question is whether the water chestnut is a fruit or a vegetable. In *S. Y. Tank & Co.* v. *United States*, 11 Treas. Dec. 82, T. D. 27019 (G. A. 6266), it was held that the water chestnut came from the plant scientifically known as *Eleocharis tuberosa;* that it was a well-known Chinese vegetable and that it was properly dutiable as a vegetable and not as a vegetable substance. In *Yee Shing & Co.* v. *United States*, 72 Treas. Dec. 41, T. D. 49060, it was held that water chestnuts were dutiable as vegetables and not as chestnuts. That decision was followed in *Quong Lee & Co.* v. *United States*, 10 Cust. Ct. 23, C. D. 716, where the court pointed out that there were two kinds of water chestnuts "one a plant of the genus *Trapa* or the nut which grows thereon and the other a sedge (*Eleocharis tuberosa*) or its edible tuber." The court also summarized the testimony of two witnesses as follows:

\* \* \* They testified that they plant the stem in the mud around lakes and they grow underground in the water; that when they are harvested the stem and roots are cut off and the tuber is washed and dried. One of them testified that they look like small potatoes and have no shell. These witnesses evidently described the tuber of the sedge *Eleocharis tuberosa*, the tuber of which is edible.

Another witness in that case described the variety known as *Trapa natans*, stating that it looked like a buffalo head with two horns sticking out.

No sample was submitted in the instant case, but the drawing on defendant's illustrative exhibit 1 does not resemble a buffalo head with two horns, and the witness, Henry Luck, stated that the merchandise was similar in appearance to the potato. The water chestnuts here involved apparently belong to the variety known as *Eleocharis tuberosa*.

Although the term fruit may be used in a wide sense to include any product of plant growth useful to man, the word is popularly used to indicate a product of a perennial or woody plant. The following discussion under the definition of "fruit" in Funk & Wagnalls New Standard Dictionary indicates that a tuber is popularly considered a vegetable and not a fruit:

**fruit** (L. *fructus*, from *fruor*, enjoy, the sense still retained in the kindred word *fruition*) originally denoted any profitable or enjoyable result or product, as "the *fruits* of righteousness," *Phil.* i, 11; and especially any useful or enjoyable product of a living organism, vegetable or animal; as, "Blessed shall be the *fruit* of thy body and the *fruit* of thy ground, and the *fruit* of thy cattle," *Deut.* xxviii, 4. Gradually the word became restricted to edible products of plants, including all *grains*. \* \* \* In botany, a *fruit* of a flowering plant is the matured seed-vessel and its contents, together with such accessory parts as become finally incorporated with them. Thus, in the botanical sense, not only apples, pears, peaches, tomatoes, figs, etc., but all berries, nuts, grains, beans, peas, pumpkins, squashes, cucumbers, and melons, as well as pine-cones, the samaras or winged seeds of the maple, ash, or elm, and many other products, are *fruits*. Popular usage has, however, become much narrower. The grains have been dropped, and

the tendency is to drop nuts also, so that a fruit is now generally understood to be the fleshy and juicy product of some plant, usually tree or shrub (and nearly always containing the seed), which, when ripe, is edible without cooking, and adapted for use as a dessert rather than as a salad. * * * A *vegetable*, in the popular sense, is any part of a herbaceous plant commonly used for culinary purposes, and may consist of the *root*, as in the beet and turnip; the stem, as in the asparagus, celery, and rhubarb (or pie-plant); a *tuber*, or underground stem, as in the potato; the *foliage*, as in cabbage and spinach; or of that which is botanically the *fruit*, as in the tomato, bean, pea, and eggplant. * * * Edible products that grow under ground are commonly classed as *vegetables*, whether edible *roots*, as the beet, turnip, and carrot, or potatoes and onions, which are not true *roots*, but modified stems. Peanuts (groundnuts or goobers) are true *fruits*, tho ripening underground. The fruit of the potato is the so-called potato-ball, which is botanically a *berry*.

Plaintiff points out that in tariff cases a vegetable is distinguished from a fruit by its use (*Nix* v. *Hedden*, 149 U. S. 304; *Togasaki & Co.* v. *United States*, 12 Ct. Cust. Appls. 463, T. D. 40667; *Nippon Co.* v. *United States*, 12 Ct. Cust. Appls. 548, T. D. 40781) and then lists various uses of fruit, including cooking with other ingredients, such as meat, fish, or vegetables, in order to add flavor. While certain fruits, such as apples and pineapples, are used in cooking, that use alone could not determine whether a given food product were a fruit or a vegetable. In *Nix* v. *Hedden, supra*, the following criterion was set up (p. 307):

Botanically speaking, tomatoes are the fruit of a vine, just as are cucumbers, squashes, beans and peas. But in the common language of the people, whether sellers or consumers of provisions, all these are vegetables, which are grown in kitchen gardens, and which, whether eaten cooked or raw, are, like potatoes, carrots, parsnips, turnips, beets, cauliflower, cabbage, celery and lettuce, usually served at dinner in, with or after the soup, fish or meats which constitute the principal part of the repast, and not, like fruits generally, as dessert.

We do not think the phrase "which are grown in kitchen gardens" limits the term "vegetables" to such products as are actually grown in kitchen gardens, since, as is well known, many of the articles enumerated above are grown at times in fields or hothouses. In *Togasaki & Co.* v. *United States, supra*, the court said:

It is not a matter of importance, in view of these decisions, where a certain product of the vegetable kingdom grows, in the consideration of whether it is or is not a vegetable. It may grow in the garden, it may grow in the fields; it may be cultivated, it may be wild. It may be a product of our country or it may be indigenous to other lands. If it is eaten as a food and as other well-known vegetables, it is a vegetable.

We think the use of the article as a vegetable with the principal part of the meal is the controlling factor, despite possible wider use of fruit since the time of those decisions. In the instant case, the evidence shows that water chestnuts are used in soup or cooked with meat; they are occasionally peeled and eaten raw, but there is nothing to show that they are generally used as dessert.

Cases holding that the olive is a fruit (*United States* v. *Zucca*, 18 Treas. Dec. 339, T. D. 30147; *Moscahlades Bros.* v. *United States*, 13 Ct. Cust. Appls. 633, T. D. 41482; *United States* v. *Moscahlades Bros.*, 9 Ct. Cust. Appls. 46, T. D. 37904; *Costogue* v. *United States*, 15 Ct. Cust. Appls. 55, T. D. 42152) do not modify the rule laid down in *Nix* v. *Hedden*, *supra*, as plaintiff claims, since the olive is the product of a tree, thus falling within the popular meaning of the word "fruit."

We hold therefore that the water chestnuts herein were properly classified by the collector as vegetables in their natural state under paragraph 774 of the Tariff Act of 1930. The protest is overruled and judgment will be entered for the defendant