(C.D. 4336)

Wo Kee & Company et al. *v.* United States

United States Customs Court, Third Division

(Decided February 29, 1972)

*Glad & Tuttle* (*George R. Tuttle* and *Hudson F. Edwards* of counsel) for the plaintiffs.

*L. Patrick Gray, III,* Assistant Attorney General (*Mollie Strum* and *Gilbert Lee Sandler,* trial attorneys), for the defendant.

Before RICHARDSON and LANDIS, Judges, and ROSENSTEIN, Senior Judge; RICHARDSON, J., concurring in part; dissenting in part

ROSENSTEIN, Judge: The merchandise under protest herein, variously invoiced as "Lotus Seeds" and "Splitted [sic] Lotus Seeds", produced in Thailand and entered at the port of San Francisco in three shipments dating from August 26, 1965 to December 7, 1967, was classified and assessed with duty at the rate of 17½ per centum ad valorem under TSUS item 140.55 of Schedule 1, Part 8, Subpart B, which provides for:

Vegetables, dried, desiccated, or dehydrated,
    whether or not reduced in size or reduced to flour
    (but not otherwise prepared or preserved) :
        Dried, desiccated or dehydrated :
           \*     \*     \*     \*     \*     \*     \*
        Other _____ 17.5% ad val.

Plaintiffs contend [1] that the importations are entitled to entry free of duty under TSUS item 193.25 of Schedule 1, Part 15, Subpart G, which provides for:

> Vegetable substances, crude, not specially pro-
> vided for_____     Free

Plaintiffs' witness, Mr. Arthur Lee, manager and buying representative for Eastern Bakery, a family concern in the Chinese pastry and restaurant business which had ordered the merchandise involved in protest 68/23943, testified that he is familiar with the imported lotus seeds (exhibits 1 and 2) which his bakery uses as a filling in cakes and pies. He first boils the seeds to soften them and remove the skins, then, after mixing them with sugar, flour and oil, grinds them into a paste filling. This type of filling is used in other Chinese bakeries in San Francisco and Los Angeles.

The witness has also seen the seeds used as an ingredient in soup, as an item on display in herb shops, and as a sugar coated candy. He has seen lotus seeds used in bakery shops and as a candy in Los Angeles, Seattle, New York, Washington, D.C., and Hawaii, but believes their "predominant" use is in "bakery items" (R. 27).

Although Mr. Lee orders split lotus seeds without specifying whether the germinating pits should be removed, he receives them without the pits. Occasionally a whole seed (exhibit B) or one that is split but with the pit still intact (exhibit A) is mixed in with the shipment. According to the witness it is unnecessary to remove the pits as they do not affect the flavor. (He thinks the Food and Drug Administration wants them split and fumigated.)

Defendant's witness, Mr. George W. Lau, import specialist for the Bureau of Customs, who handles food items including lotus seeds, testified that he has used lotus seeds as an ingredient in making winter melon soup, and has eaten them in lotus seed mooncakes, filled buns, and as candied seeds. He would remove any pits remaining in the seeds as they are very bitter and would impart that flavor to the soup. He has also seen whole seeds, which are imported from Hong Kong, with holes drilled in them through which the pits have been removed.

There are three aspects to plaintiffs' claim:  (1) that the lotus seeds at bar are not vegetables within the ambit of item 140.55; (2) that they are not advanced beyond the crude state; and (3) that they are classifiable under item 193.25 as vegetable substances, crude, not specially provided for.

Plaintiffs of course have the dual burden of establishing error in the district director's presumptively correct classification and the correctness of their claimed classification.

---

[1] Claims under TSUS items 439.10 and 439.30 were abandoned at the trial (R. 6–7) and are hereby dismissed.

Our first inquiry therefore is whether the instant articles are "vegetables" within the meaning of the tariff law.

In determining whether an article is a vegetable, its *use* is the controlling factor for tariff purposes. In *Togasaki & Co.* v. *United States*, 12 Ct. Cust. Appls. 463, 466, 467, T.D. 40667 (1925), the appellate court stated:

> * * * Thus the rule of law has been evolved which we think controls here, that whether a certain vegetable product is, or is not, a vegetable, depends upon the use to which it is or may be put. This rule was expressed fairly in Austin, Nichols & Co. *v.* United States (4 Ct. Cust. Appls. 313 [314]; T.D. 33519), where we said:
>
>> Preliminarily, it should be observed that in Nix *v.* Hedden * * *, and numerous other cases, it has been held that what constitutes a vegetable or a vegetable prepared, as these terms are used in said paragraph 252 and tariff acts generally, was determined by the use of the articles, whether served with, and to be eaten as a part of the meal, or as a condiment for flavoring, or as a relish, or a similar purpose.
>
> This has been the holding in United States *v.* Shing Shun & Co. (2 Ct. Cust. Appls. 388; T.D. 32113); United States *v.* Wallace (4 Ct. Cust. Appls. 142; T.D. 33413); Austin, Nichols & Co. *v* United States (6 Ct. Cust. Appls. 9; T.D. 35249), and United States *v.* Coroneos Bros. (9 Ct. Cust. Appls. 220; T.D. 38198).
>
> It is not a matter of importance, in view of these decisions, where a certain product of the vegetable kingdom grows, in the consideration of whether it is or is not a vegetable. It may grow in the garden, it may grow in the fields; it may be cultivated, it may be wild. It may be a product of our country or it may be indigenous to other lands. If it is eaten as a food and as other well-known vegetables, it is a vegetable. * * *

See also *Soon* v. *Magone*, 159 U.S. 417 (1895); *United States* v. *Schoenfeld & Sons, Inc.*, 44 CCPA 179, C.A.D. 657 (1957); *Nippon Co.* v. *United States*, 12 Ct. Cust. Appls. 548, T.D. 40781 (1925).

Chief use of the article was considered to be the controlling factor in *Bing Kee & Co.* v. *United States*, 16 Cust. Ct. 176, C.D. 1006 (1946), appeal dismissed September 30, 1946, where water chestnuts chiefly used in soup or cooked with meat or chicken, and occasionally peeled or eaten raw, were held to be vegetables. And in *Robertson* v. *Salomon*, 130 U.S. 412, 414 (1889), involving the question whether beans were classifiable as seeds or vegetables, the court held that the trial judge erred in not allowing defendant to prove the common designation of beans as an article of food, stating:

> On the other hand, in speaking generally of provisions, beans may well be included under the term "vegetables." As an article of food on our tables, whether baked or boiled, or forming the

basis of soup, they are used as a vegetable, as well when ripe as when green. This is the principal use to which they are put.

In *Brown & Co. et al.* v. *United States*, 14 Ct. Cust. Appls. 96, T.D. 41588 (1926), the court held that dried, split, nongerminative lotus lily seeds or nuts were not classifiable as flower seeds because their germinating properties had been removed but, as they were used as a vegetable in the preparation of soup, were properly classified as vegetables prepared.[2]

Turning to the record herein, we note that it points up several uses for degerminated lotus seeds: as a filling in cakes and buns, as a vegetable in soup, and as a candy. Presumably the district director, whose official acts are clothed with a presumption of correctness and who is presumed to have found every fact to exist that is necessary to sustain his classification, *McKesson & Robbins, Inc.* v. *United States*, 27 CCPA 157, C.A.D. 77 (1939), found that the seeds at bar were chiefly used[3] as vegetables.

Unless the chief use of an article is so well known and indisputable that judicial notice may be taken of it, *Tanross Supply Co., Inc.* v. *United States*, 58 CCPA 26, C.A.D. 1000 (1970), chief use is a question of fact which should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation. *W. A. Gleeson* v. *United States*, 58 CCPA 17, C.A.D. 998 (1970); *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544 (1953); *Kotake Co., Ltd., Standard Trading Co., Ltd.* v. *United States*, 67 Cust. Ct. 178, C.D. 4271 (1971).

This court is unable to conclude, from the vague, fragmentary observations of plaintiffs' witness herein, either that the district director erred in his finding of chief use, or that at, or immediately prior to, the date of importation herein, articles of this kind were chiefly used, as plaintiffs claim, in the Chinese communities of the United States (the areas where such articles are eaten) as a filler in "baked goods".

Furthermore, assuming *arguendo* that the split lotus seeds at bar are not vegetables for tariff purposes, plaintiffs have not borne their burden of proof with respect to their claim for classification under item 193.25 as "vegetable substances, crude, not specially provided for."

---

[2] In *United States* v. *Yick Shew Tong Co.*, 25 CCPA 255, T.D. 49392 (1938), split dried nongerminative lotus nuts (hoi pak lin) used in making a soup that was drunk solely for medicinal purposes were held free of duty under paragraph 1669, Tariff Act of 1930, as crude drugs rather than as drugs advanced, or as fruits or vegetables.

[3] General Interpretative Rule 10 (e) (i) provides:

(e) in the absence of special language or context which otherwise requires—

(i) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined;

We note that that provision is limited by the phrase "not specially provided for" which, as the court said of its predecessor provision, paragraph 1722, Tariff Act of 1930, "* * * requires that other paragraphs need to be investigated before that paragraph can be considered." *R. J. Roesling & Co.* v. *United States*, 10 Cust. Ct. 117, 121, C.D. 734 (1943).

Plaintiffs however are silent on this point, failing even to allege, much less demonstrate, the nonapplicability of other provisions of the tariff schedules. Absent some showing that the split lotus seeds do not fall within other categories of edible foods, such as, for example, items 145.58 and 145.60, providing for other edible nuts, or items 149.50 or 149.60, providing for other fruits, fresh, or prepared or preserved, there is no basis for us to draw such conclusion.

In light of the foregoing, we need not reach the question whether plaintiffs have established that the split degerminated seeds herein are "crude" within the meaning of item 193.25. Nor need we consider what purposes would have been served by granting plaintiffs' motions for a commission to take the testimony of a witness overseas regarding the processing of the seeds prior to their importation into the United States. It suffices to say that, on the record herein, we find no abuse of discretion, as plaintiffs allege, in the trial judge's denial of their first motion for issuance of a commission; and we reaffirm our denial of plaintiffs' second such motion, to set aside the submission and issue a commission, which was made one year after submission of the case.

The protest claim under TSUS item 193.25 is overruled; the claims under TSUS items 439.10 and 439.30 are dismissed.

Judgment will be entered accordingly.

CONCURRING IN PART;

DISSENTING IN PART

RICHARDSON, Judge: I concur in the opinion of Judge Rosenstein insofar as it concerns entries WH3192 and WH374 of protest 68/23943, and would join in any separate judgment entered under protest 68/23943 upon such opinion. However, I would dismiss protest 68/52885 filed against entry 37215 for prematurity by reason of the fact that in contravention of 19 U.S.C.A., section 1503(a) (section 503(a), Tariff Act of 1930, as amended by the Customs Simplification Act of 1953) liquidation of the subject entry was not made upon a *final appraised value*, and as such, is void, liquidation having taken place within 60 days of the date of the appraiser's report. See *United States* v. *Boston Paper Board Co.*, 23 CCPA 372, T.D. 48233 (1936), and other cases cited in my dissenting opinion in *National Silver Co.* v. *United States*, 67 Cust. Ct. 262, C.D. 4283, 333 F. Supp. 551, decided October 14, 1971, appeal pending in suit number 5492. It is the duty of the district direc-

tor of customs to liquidate entry 37215 in the manner provided for by law so that plaintiff Wo Kee & Company may file a valid protest against said entry if it be so advised.