INTERNATIONAL SPRING MFG.
CO., Plaintiff,

v.

UNITED STATES, Defendant.

C.D. 4862; Court No. 74-9-02617.

United States Customs Court.

July 2, 1980.

Doherty & Melahn, Boston, Mass. (William E. Melahn, Boston, Mass., at the trial; Walter E. Doherty, Jr. and Peter T. Middleton, Boston, Mass., on briefs), for plaintiff.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Field Office for Customs Litigation, New York City (Robert H. White, New York City, at the trial and on brief), for defendant.

MALETZ, Judge:

The problem in this case is to determine the proper tariff classification of leaf springs of base metal which were imported from Canada in 1973 and 1974. Customs classified the articles under item 652.88 of the Tariff Schedules of the United States (TSUS) which provides for other springs and leaves for springs, of base metal, and assessed duty at the rate of 9.5 percent ad valorem. Plaintiff claims the articles are properly classifiable under item 652.84 which provides for springs and leaves for springs, of base metal, suitable for motor vehicle suspension and prescribes a duty rate of 4 percent ad valorem.

In this setting, the only issue is whether the imported springs are suitable for motor vehicle suspension. And resolution of this issue depends on whether the non self-propelled trailers for which the importations are suitable are "motor vehicles" within the meaning of item 652.84.

The relevant provisions of TSUS read as follows:

Schedule 6, Part 3, Subpart F.—Miscellaneous Metal Products

Springs and leaves for springs, of base metal:

[Claimed]
652.84      Suitable for motor vehicle suspension ............... 4% ad val.

\*   \*   \*   \*   \*   \*   \*

[Classified]
652.88      Other .................... 9.5% ad val.

Also relevant to plaintiff's claim are the following provisions of TSUS:

Schedule 6, Part 6, Subpart B.—Motor Vehicles

\*   \*   \*   \*   \*   \*   \*

Subpart B headnotes:

1. For the purposes of this subpart—

\*   \*   \*   \*   \*   \*   \*

(b) automobile truck tractors imported with their trailers are, together with their trailers, classifiable in item 692.02, but, if such tractors or trailers are separately imported, they are classifiable in item 692.27.

\*   \*   \*   \*   \*   \*   \*

Motor vehicles (except motorcycles) for the transport of persons or articles:

Automobile trucks valued at $1,-000 or more, and motor buses:

692.02      Automobile trucks ........ 8.5% ad val.

\*   \*   \*   \*   \*   \*   \*

Chassis, bodies (including cabs), and parts of the foregoing motor vehicles:

\*   \*   \*   \*   \*   \*   \*

692.27      Other ...................... 4% ad val.

\*   \*   \*   \*   \*   \*   \*

692.60   Vehicles (including trailers), not self-propelled, not specially provided for, and parts thereof .......... 8% ad val.

General Headnotes and Rules of Interpretation

10. *General Interpretative Rules.*—For the purposes of these schedules—

\*   \*   \*   \*   \*   \*   \*

(b) the titles of the various schedules, parts, and subparts and the footnotes therein are intended for convenience in reference only and have no legal or interpretative significance;

The importations consist of four types of leaf springs which are suitable for and used in various kinds of non self–propelled trailers such as utility trailers for carrying air compressors, generating units, etc.; boat trailers; horse trailers; and mobile homes. The springs are not used in self–propelled vehicles nor is there any evidence that they are suitable for such use.[1]

Against this background, it must be concluded for the reasons that follow that the non self–propelled trailers for which the imported springs are suitable are not motor vehicles within the meaning of item 652.84, as claimed by plaintiff. In this circumstance, the court holds that the springs in question were correctly classified by Customs under item 652.88 as other springs and leaves for springs, of base metal.

■ As stated before, resolution of the instant controversy turns on whether the term "motor vehicle" as used in item 652.84 is limited to self–propelled vehicles or whether, as plaintiff claims, the term includes non self–propelled vehicles such as the trailers here involved. And in construing that term, it is basic that in the absence of a contrary legislative intent, the common meaning controls. It is to be added that the common meaning of a term is a matter of law to be determined by the court, for which purpose the court may consult dictionaries and other authorities as an aid to the court's own knowledge. *Trans–Atlantic Company v. United States*, 60 CCPA 100, 102, C.A.D. 1088, 471 F.2d 1397, 1398 (1973).

*Funk & Wagnalls New Standard Dictionary of the English Language* (Unabridged, 1956) defines "motor vehicle" as:

n. Any form of self–propelling vehicle.

*Webster's Third New International Dictionary of the English Language* (Unabridged, 1963) defines "motor vehicle" as:

n. an automotive vehicle not operated on rails; *esp.* one with rubber tires or for use on highways.

The same source defines "automotive" (vehicle) as:

2: of, relating to, or concerned with vehicles or machines that propel themselves (as automobiles, trucks, planes, motor boats).

*The Harper Encyclopedia of Science*, Volume III (1st ed. 1963) defines "motor vehicle" as follows (p. 806):

MOTOR VEHICLE: a self–propelled conveyance used for passenger transportation (automobiles, buses, motorcycles) or for hauling freight (trucks). \* \* \*

A similar definition appears in the *McGraw Hill Dictionary of Scientific and Technical Terms* (1974), which restricts motor vehicles to self–propelled devices.

■ Plaintiff, though, points out that the "National Traffic and Motor Vehicle Safety Act of 1966" defines a "motor vehicle" as "any vehicle driven or drawn by mechanical powered manufactured primarily for use on the public streets, roads, and highways, ex-

---

1. Suitability for use in terms of TSUS means that the article in question must be actually, practically and commercially fit for the intended use. E. g., *United States v. Norman G.*

*Jensen, Inc.*, 64 CCPA 51, 53, C.A.D. 1183, 550 F.2d 662, 664 (1977); Sturm, *Customs Law and Administration* (1980) § 53.3, p. 501.

cept any vehicle operated exclusively on a rail or rails." 15 U.S.C. § 1391(3).[2] Based on the definition contained in that and other non–tariff statutes, plaintiff argues that the term "motor vehicle" includes any non self–propelled vehicle that is used on public highways. However, it is settled that the definition of a term contained in a statute or regulation dealing with *non–tariff* matters, such as public safety, does not determine the common meaning of that term for *tariff* purposes. *Pharmacia Laboratories, Inc. v. United States,* 67 CCPA ——, C.A.D. 1235, 609 F.2d 491, 493 (1979); *United States v. Mercantil Distribuidora et al.,* 43 CCPA 111, 116, C.A.D. 617 (1956); *Marine Products Co. v. United States,* 42 Cust.Ct. 154, 155, C.D. 2080 (1959).

Furthermore, it is apparent from item 692.60, *supra,* which covers "Vehicles (including trailers), not self–propelled, not specially provided for, and parts thereof," that Congress intended that various types of non self–propelled trailers are to be classified as "vehicles" and not as "motor vehicles."[3]

Plaintiff next argues that headnote 1(b), Schedule 6, Part 6, Subpart B, *supra,* evidences an intent by Congress to classify non self–propelled vehicles, such as the trailers here involved, as motor vehicles for the purpose of TSUS. That headnote (quoted before) provides:

1. For the purposes of this subpart—
* * * * * *

(b) automobile truck tractors imported with their trailers are, together with their trailers, classifiable in item 692.02, but, if such tractors or trailers are separately imported, they are classifiable in item 692.27.

As previously indicated, item 692.02 covers "Motor vehicles (except motorcycles) for the transport of persons or articles: * * Automobile trucks," while item 692.27 cov-

ers "Chassis, bodies (including cabs), and parts of the foregoing motor vehicles: * * Other." From this, plaintiff contends that even if the trailers here involved are imported separately and apart from their tractors, they are still considered by headnote 1(b) to be "parts of the foregoing motor vehicles," and as such classifiable under item 692.27 as other parts of motor vehicles.

Headnote 1(b), as the parties agree, incorporates the decision of this court in *Border Brokerage Company v. United States,* 42 Cust.Ct. 343, Abs. 62955 (1959). See P.R.D. 74–10, 8 Cust.Bull. 603, 604 (1974). In *Border Brokerage,* semi–trailers, each of which was capable of carrying four automobiles, were held to be properly classifiable under paragraph 369(c) of the Tariff Act of 1930 as parts of automobile trucks. In use, the semi–trailer was affixed to a gasoline–powered tractor by means of a "fifth wheel" or "kingpin." Once attached, the trailer and tractor were generally kept together to maintain identity of licensing, and for the reason that the runways or jump skids, running from the truck to the trailer, had to be a proper length to reach from the front upper deck of the trailer to the carrying rack above the cab of the truck. However, they could be separated and used with other cabs designed to pull such trailers. Further, the engine was housed in a tractor capable of being joined to the trailer and carrying a portion of the load.

Pursuant to safety regulations of the Interstate Commerce Commission, the trailers were equipped with airbrakes so that if the kingpin assembly failed, and the trailer broke loose, the brakes would lock and bring the trailer to a standstill. Air lines for the brakes, and electric lines for the various signal lights, were respectively hose and wire connections which ran from the tractor to the trailer. They were so inte-

---

2. Plaintiff's witnesses relied on this definition of "motor vehicle" contained in the Safety Act of 1966 for their conclusion that the term "motor vehicle" included any vehicle which was drawn by another vehicle on the highways or roads.

3. The fact that item 692.60 is contained in Schedule 6, Part 6, Subpart B, which is entitled "Motor Vehicles," is of no consequence. This is because general interpretative rule 10(b), *supra,* provides that "the titles of the various schedules, parts, and subparts * * * are intended for convenience in reference only and have no legal or interpretative significance."

grated that they operated as and when the driver of the cab applied the brake or foot pedal.

Based on these facts, the court concluded that the trailers in question were parts of automobile trucks for the reasons that the trailers were dedicated to a specific use in conjunction with the motor cabs and the record established that the joining of a trailer to the cab created a single integrated unit with a common braking system and a common electric system operated simultaneously by the driver of the cab.

██ With these considerations in mind, it is apparent that not *all* non self–propelled trailers are included within headnote 1(b). Indeed, the language of that headnote specifically refers only to automobile truck tractors imported with *"their"* trailers and states that if *"such"* trailers are imported separately they are classifiable under item 692.27 as other parts of motor vehicles. Particularly against the background of *Border Brokerage*, it seems evident that the headnote is directed to separately imported trailers which function in such manner as to create single integrated automobile truck tractors when joined and hence are to be considered parts of motor vehicles for the purpose of TSUS. In the present case, by contrast, plaintiff has presented no evidence whatever that the involved trailers function as a single integrated unit when connected to the truck tractors, let alone any other evidence to establish that the trailers constitute parts of automobile truck tractors.

In the last analysis, plaintiff's position in effect is that *all* non self–propelled trailers are "motor vehicles" under TSUS irrespective of whether or not they function as a single integrated unit when connected to the truck tractors. But such a position is at odds not only with the common meaning of "motor vehicle" but also with headnote 1(b). What is more, such an interpretation would render nugatory the words "including trailers" in item 692.60, which item (as previously indicated) covers "Vehicles (*including trailers*), not self–propelled, * * *." (Emphasis added.)

To support its position that all non self–propelled trailers are "motor vehicles" under TSUS, plaintiff relies on the following abstract of a Bureau of Customs letter dated October 7, 1968 (T.D. 68–284(16), 2 Cust. Bull. 631):

Leaf springs measuring 26 inches in length from eye to eye which are used in the suspension systems of highway trailers, mobile homes, and in vehicles used in guided tours, movie studios and other off–the–highway areas classifiable under the provision for Springs and leaves for springs, of base metal: Suitable for motor vehicle suspension in *item 652.84, TSUS.*

██ Assuming that this Bureau letter may be construed as covering all trailers, it is in error. And of course it is in no way binding on the court. *Ditbro Pearl Co., Inc. v. United States*, 62 CCPA 95, C.A.D. 1152, 515 F.2d 1157 (1975); *The Ferriswheel v. United States*, 84 Cust.Ct. ——, ——, C.D. 4844 (1980) (slip op. at 14).

██ For the foregoing reasons, the classification of the importations by Customs under item 652.88 is affirmed and the action is dismissed.