**HOLLY STORES, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 82–14.**

United States Court of Appeals, Federal Circuit.

Nov. 22, 1982.*

Peter Jay Baskin, New York City, argued for appellant. With him on brief were

---

\* On January 3, 1983, the court granted appellee's motion that the unpublished opinion of November 22, 1982, in this case be published.

The original opinion has been modified somewhat for publication, but the result is the same.

Richard M. Belanger and Sharretts, Paley, Carter & Blauvelt, P.C., New York City.

John J. Mahon, New York City, argued for appellee. With him on brief were Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., David M. Cohen, and Joseph I. Lieb-man, New York City.

Before BALDWIN, Circuit Judge, COW-EN, Senior Circuit Judge, and SMITH, Circuit Judge.

EDWARD S. SMITH, Circuit Judge.

This case comes before us on appeal from the Court of International Trade. 534 F.Supp. 818. Appellant is an importer of articles of clothing which are shipped to this country on wire or plastic clothes hangers. The Customs Service decided that the hangers were to be treated as part of the value of the clothing pursuant to General Head-note 6(b)(i) of the Tariff Schedules of the United States and dutied the hangers at the rate for the clothing. The Court of International Trade upheld the Service. We affirm.

I.

General Headnote 6(b) of the Tariff Schedules of the United States, 19 U.S.C. § 1202 (1976), describes the customs treatment of containers in which (or on which) merchandise is imported into this country. The general principle is that reusable containers or holders are treated as separate articles and, if appropriate, dutied at the rate applicable to such containers.

The shipping holders in this case were plastic and wire clothes hangers on which different articles of clothing were shipped from overseas to the United States. The evidence below showed that they were designed to be, and were, of fairly durable construction and that it would be physically possible to reuse them. However, the court also found that only an insignificant number (about 1%) of these hangers were reused in any way at all, and that those uses were of a noncommercial nature. The few hangers that were reused were either given (but never sold) to customers with the clothes that hung on them, used to replace broken hangers, or used to return goods from the retail store to the warehouse. The remaining hangers (about 99% of those imported) were apparently discarded.

II.

Upon importation of these clothes and hangers, the hangers were treated as part of the value of the apparel which hung on them and were dutied at the rate for wearing apparel and accessories, pursuant to General Headnote 6(b)(i). Appellant argues that General Headnote 6(b)(*ii*) applies instead and that the wire and plastic hangers should be treated separately and dutied at the lower rates for metal products and rubber and plastics products, respectively.

General Headnote 6(b)(ii), however, is not properly applied to this case. It states, in pertinent part:

> shipping or transportation containers or holders, if *designed for, or capable of, reuse,* are subject to treatment as imported articles *separate and distinct* from their contents. * * * [Emphasis supplied.]

"Reuse" in this context has been consistently interpreted to mean practical, commercial reuse, not incidental reuse. *Fontana Hollywood Corp. v. United States,* 64 Cust.Ct. 204, C.D. 3981 (1970), *relying on Tariff Classification Study, Seventh Supplemental Report* (Aug. 14, 1963) at 99. Under this authoritative interpretation of "reuse," we hold that the uses of these hangers beyond shipping them once from overseas to the United States were purely incidental.

The other significant language in General Headnote 6(b)(ii)—that the holders or containers be considered "separate and distinct" from their contents—also mandates this result. Each holder, in virtually every case, was associated only with one piece of clothing during its entire useful life. The hangers were never commercially treated as "separate and distinct" from the articles of clothing hung on them.

Paragraph (i), whose application the Government urges and the lower court held, contains the converse language of paragraph (ii): "holders * * * *not* designed for, or capable of, reuse." General Headnote 6(b)(i) (emphasis supplied). The limited meaning of "reuse" is the same in both paragraphs. We therefore hold that the hangers in this case were "not designed for, or capable of, reuse" within the meaning of General Headnote 6(b)(i) and were properly dutied at the same rate as the apparel they held. The decision of the Court of International Trade is affirmed.

*AFFIRMED.*