of the administering authority must have a rational basis discernable to the court from the evidence in the record.

Other than a self serving conclusion that the product description of acrylic sheet is not vague and, accordingly, that Kyowaglas-XA is within the scope of the antidumping finding in Acrylic Sheet from Japan, the ITA has provided no specific findings based on the applicable criteria as to whether Kyowaglas-XA falls within the class or kind of merchandise encompassed by the original antidumping finding.

Counsel in their respective briefs as well as in oral argument seek to place before this court on review evidentiary facts relating to the criteria which the ITA has deemed unnecessary to consider and apply. Had the instant action been before this court *de novo,* the conflicting evidence advanced by the plaintiff, defendant, and intervenor would have been subject to resolution. However, the failure of the ITA in its § 1675(a) review to consider these evidentiary facts in the light of the established criteria and to make its findings with respect thereto serves to make judicial review of the instant action, at this juncture, an idle act.

Accordingly, it is hereby

Ordered that the within action be and is hereby remanded to the ITA to consider in conformity with this opinion all relevant evidentiary facts and information presently in its possession or which might hereafter be presented to it in connection with the final results of administrative review conducted by it as to whether Kyowaglas-XA is within the scope of the 1976 antidumping finding on Acrylic Sheet from Japan, and it is further

Ordered that the determination so made by the ITA shall be returned to this court within a period of 30 days from the entry of this order, and it is further

Ordered that all proceedings in the above action be and are hereby stayed to permit the ITA to make its determination on remand.

---

GOLDHOFER TRAILERS USA, INC. PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81-7-00837

Before LANDIS, *Senior Judge.*

(Decided April 2, 1984)

*Donohue and Donohue (James A. Geraghty* at the trial and on the briefs) for the plaintiff.

*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Robert H. White* at the trial and *John J. Mahon* on the brief), for the defendant.

LANDIS, *Senior Judge:* This case arises out of a protest denied by the District Director of Customs for the Port of New Orleans, Louisiana. Customs classified merchandise, imported from West Germany, as vehicles (including trailers), not self-propelled, pursuant to TSUS item 692.60, and assessed duty at the rate of 8% ad valorem. Plaintiff claims that the merchandise is properly classifiable as other motor vehicle parts pursuant to TSUS item 692.27, as modified by Presidential Proclamation 3822, T.D. 68/9, dutiable at the rate of 4% ad valorem. The applicable TSUS items are as follows:

SCHEDULE 6, PART 6 OF THE TARIFF SCHEDULES OF THE UNITED STATES (TSUS)

SUBPART B—MOTOR VEHICLES

*Subpart B Headnotes:*
1. For the purposes of this subpart—
    \*      \*      \*      \*      \*      \*      \*

    (b) automobile truck tractors imported with their trailers are, together with their trailers, classifiable in item 692.02, but, if such tractors or trailers are separately imported, they are classifiable in item 692.27.

\*      \*      \*      \*      \*      .\*      \*

Motor vehicles (except motorcycles) for the transport of persons or articles:

Automobile trucks valued at $1,000 or more, and motor busses:

692.02          Automobile trucks...................... 8.5 percent

\*      \*      \*      \*      \*      \*      \*

Chassis, bodies (including cabs), and parts of the foregoing motor vehicles:

Bodies (including cabs) and chassis:

\*      \*      \*      \*      \*      \*      \*

Other:

\*      \*      \*      \*      \*      \*      \*

Claimed:

692.27          Other........................................... 4 percent

\*      \*      \*      \*      \*      \*

Classified:

692.60          Vehicles (including trailers),   8 percent
                not self-propelled, not specially provided for, and
                parts thereof.

During the course of the trial plaintiff called two (2) witnesses for testimony and introduced exhibits I and I–A and illustrative exhibits two (2) through five (5) each including an accompanying photographic slide. Defendant introduced a singular exhibit consisting of a photographic brochure limited to the top of page four (4) therein.[1] Defendant did not call any witnesses.

Plaintiff's initial witness was Mr. Norbert Bolay, the Chief Engineer since 1977 for Goldhofer Fahrzeuwerk GmbH. & Co. the manufacturer of the merchandise in issue, located in Memmingen, West Germany. Mr. Bolay holds a degree in mechanical engineering. His studies included automatic parts and hydraulic systems. The witness testified that he supervised the production of the merchandise in issue during the whole fabrication time (R.13). He described the imported merchandise as a gooseneck and four modules, each module having four axles and each axle having eight

---

[1] A photograph of the imported merchandise (introduced at trial as plaintiff's Exhibit I) is attached as appendix I to this opinion to facilitate the understanding of the magnitude of the merchandise and place it in its proper perspective.

tires. The merchandise was shipped in one complete shipment but in disassembled form (R.21). The witness stated that it takes approximately thirty minutes to assemble the gooseneck with a module (R.24) and that the gooseneck is attached to a module on one side and to a fifth wheel coupling of a truck tractor on the other side and that this was the only way the merchandise was functionable (R.26). The witness further stated that the merchandise in issue has an electrical system, is equipped with a track and has steering and braking systems, all systems being under direct control of the driver of the truck tractor.

Whereupon diagrams and related photographic slides illustrating the various systems (Illus. exhibit 2 and 2-A, electrical system, Illus. exhibit 3 and 3-A, braking system, Illus. exhibit 4 and 4-A, steering system) were introduced into evidence.

Additionally, the merchandise has a hydraulic system connected to the truck tractor to support suspension (R.52, Illus. exhibit 5 and 5-A). Mr. Bolay further testified that in his professional opinion as an engineer the merchandise constitutes a semitrailer and stated that a semitrailer transfers part of its load and dead weight to the fifth wheel coupling of a truck tractor and to the rear axle (R.49) and, that a truck tractor has no other function than use with a semitrailer. He also stated that the merchandise in issue cannot be pulled or operated by any vehicle other than a truck tractor (R.61) and, that the benefit of the semitrailer as opposed to a full trailer is the partial weight transfer to the rear two axles of the truck tractor which gives a high tractive effort (traction) (R.63). This is as opposed to a full trailer which operates with merely a drawbar and which does not distribute load weight to the cargo-pulling vehicle. Mr. Bolay stated that the 1978 cost of the merchandise in issue was approximately one million and fifty thousand Deutsch marks of which the gooseneck's share accounted for approximately two hundred thousand Deutsch marks. The cost of a drawbar used in a full trailer is approximately two thousand Deutsch marks.

On cross-examination Mr. Bolay stated that modules constructed for use with a gooseneck (denominated by Goldhoefer as its STHP series) are not interchangeable with modules constructed for use with a drawbar (denominated by Goldhofer as its THP series) (R.67). The witness further stated that the modules used in the THP series and the STHP series have different steering, electrical, hydraulic and braking systems (R.85). He also testified that without the truck tractor the gooseneck trailer would be dropped down. Mr Bolay stated that a maximum of sixty five (65) tons may be transferred to the fifth wheel located on the truck tractor and that this amount of weight represents approximately 14% of the overall weight capacity of the entire system (R.95).

On redirect examination the witness testified that the gooseneck weighs 15.4 tons and that the weight of the entire vehicle is approximately 90 tons.

Plaintiff's next and final witness was Mr. Bernard R. Weber, a professional engineer with a graduate degree in mechanical engineering. Over the years Mr. Weber has been the Executive Vice President and Chief Executive Officer of two companies totally engaged in the manufacturing of trailers and trailer components. He possesses excellent professional credentials including active work with the Society of Automotive Engineers. The witness testified that he is familiar with the design, characteristics and use of the merchandise in issue (R.114 and 115). He explained that the merchandise is designed to carry heavy loads, part of the load which is carried on the wheels and tires of the modules and part carried on the fifth wheel mechanism through the gooseneck mechanism (R.115). The merchandise is designed for use with a towing vehicle equipped with a fifth wheel connection (R.116), and is not capable of use with any other type of motor vehicle (R.118). Finally, Mr. Weber testified that in his professional opinion that the merchandise was classified as a semitrailer in the automotive engineering community (R.117).

On cross-examination the witness testified that he could not state the percentage of the weight rested on the gooseneck mechanism because he did not have sufficient data concerning the weight of the trailer or the weight and position of the load suspended on anyone set of wheels (R.122). The witness further testified that he is familiar with modules that are towed by means of a drawbar attached to a towing vehicle and stated that none of the weight is transferred to the towing vehicle except on the matter of longitudinal tension when breaking (R.130). Mr Weber also testified that the basic modules could be used in either the gooseneck or the drawbar systems (R.136) where attached at the rear.

The issue presented is whether the modules and gooseneck taken collectively constitute a semitrailer, thereby falling within the purview of headnote 1(b) classifiable in TSUS item 692.27 or, whether the merchandise falls within the *eo nomine* designation of a non-self-propelled trailer classifiable in TSUS item 692.60.

After examining the testimony of record, pertinent cases, lexicons and all other evidence of record I find that plaintiff has successfully met its dual burden of proof by demonstrating that the classification of the Customs Service was erroneous and that its own claimed classification is correct. *United States* v. *New York Merchandise Co.*, 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970); *Ideal Musical Merchandise Co.* v. *United States,* 84 Cust. Ct. 56, C.D. 4843 (1980).

Defendant maintains that the imported merchandise eoes not constitute what is known as a semitrailer. Plaintiff argues that the merchandise possesses all of the essential elements for merchandise to be classifiable as a semitrailer. The term semitrailer does not appear in the tariff laws of the United States. Therefore, the

court must establish a common meaning of the term for tariff purposes.

The common meaning of a tariff term is a question of law, not fact, which the court must decide. *American Express Co.* v. *United States,* 39 CCPA 8, C.A.D. 456 (1951). Courts often consult dictionaries, lexicons and other reliable sources to aid in ascertaining common meaning. *United States* v. *C. J. Tower & Sons of Buffalo, N.Y.,* 48 CCPA 87, C.A.D. 770 (1961); *Holly Stores, Inc.,* v. *United States,* 3 CIT 278, 534 F. Supp. 818 (1981), aff'd., 697 F.2d 1387 (CAFC 1982). The court will also review the testimony of record to assist in defining a common meaning. *United States* v. *Mercantil Distribuidora, S.A.,* 43 CCPA 111, C.A.D. 617 (1956).

Focusing initially on the definition of the term semitrailer the court finds three highly regarded lexicons on point.

*Websters 3rd New International Dictionary Unabridged* (1968) defines the following terms:

*trailer*

> 4: a vehicle or one in a succession of vehicles hauled by some other vehicle: as a: a car on a streetcar line pulled by another car b: a light 2 wheeled car pulled (as by a bicycle or motorcycle) c: a nonautomotive highway or industrial-plant vehicle designed to be hauled (as by a tractor, motor truck, or passenger automobile) * * *

*tractor truck*

> a motive power unit in the form of a truck with short chassis and no body used in a combination highway freight vehicle— See full trailer, semitrailer * * *

*full trailer*

> a trailer whose weight is carried entirely on its own wheels

*semitrailer*

> a freight trailer that when attached is supported at its forward end by the fifth wheel device of the truck tractor * * *

The Encyclopedia Britanica develops the relationship between these vehicles, 18 *Encyclopedia Britanica* 722 (15th ed. 1978)

> Trucks can be classified as either straight or articulated. A straight truck is one in which all axles are attached to a single frame. An articulated vehicle is one that consists of two or more separate frames connected by suitable couplings. A truck tractor is a motor vehicle designed primarily for drawing truck trailers and constructed to carry part of the weight and load of a semitrailer, which is a truck-trailer equiped [sic] with one or more axles, so constructed that the end and a substantial part of its own weight and that of its load rest upon a truck tractor. In contrast, a full trailer is so constructed that all of its own weight and that of its load rests upon its own wheels.

A device called a fifth wheel is used to connect a truck tractor to a semitrailer and to permit articulation between the units. It generally includes a lower half, consisting of a trunnion (pivot assembly) plate and latching mechanism, mounted on the truck tractor for connection with a kingpin mounted on the semitrailer.

A leading treatise dealing with the automobile industry, *Society of Automotive Engineers (SAE) Handbook J. Reports, Standards and Practices* (1981 edition) defines semitrailer as follows:

*semitrailer*

> a semitrailer is a truck trailer equipped with one or n: ore axles, and so constructed that the front end and a substantial part of its own weight and that of its load rests on another vehicle.

Upon careful reading and analysis of these three definitions one immediately discerns that the common denominator is that a semitrailer is constructed in such manner that its front end is designed to be connected to a fifth wheel of a powered tractor truck and that said semitrailer is supported by the fifth wheel transferring part of its weight and that of its load to the fifth wheel. On the other hand, a full trailer fully supports its own weight and that of its load. This essentially is the common meaning of the terms semitrailer and trailer according to the lexicons.

In *International Spring Mfg. Co.* v. *United States,* 85 Cust, Ct. 5, C.D. 4862, 496 F. Supp. 279 (1980), aff'd. 68 CCPA 13, C.A.D. 1257, 641 F.2d 875 (1980), the court passed upon the scope of headnote 1(b). *International Spring,* id., applied a dedication to use test as related to imported merchandise and the application of headnote 1(b). The dedication to use test was previously used in conjunction with automotive goods in the cases of *Border Brokerage Co.* v. *United States,* 42 Cust. Ct. 343, abs. 62955 (1959) and *United States* v. *Antonio Pompeo,* 43 CCPA 9, C.A.D. 602 (1955).

In *International Spring, supra,* the court in reference to headnote 1(b) stated:

> * * * Particularly against the background of *Border Brokerage,* it seems evident that the headnote is directed to separately imported trailers which function in such manner as to create single, integrated automobile truck tractors when joined and hence are to be considered parts of motor vehicles for the purpose of TSUS * * * * at 9

In *Border Brokerage Co., supra,* the merchandise in issue was semitrailers used to transport automobiles. In holding the merchandise properly classifiable under paragraph 369(c) of the Tariff Act of 1930 as parts of automobile trucks rather than as articles of base metal, not specially provided for, the court stated:

> As the record before us establishes, the joining of a trailer to a cab creates a single integrated unit, with a common braking system and a common electrical system, operated simultaneously by the driver of the cab. Accordingly, the fact that the parts may be separated, and interchanged, would have no bearing upon the issue, especially since it is clear that unless the trailer is attached to a cab, it cannot be used in transporting automobiles, nor, indeed, for any other purpose * * * * at 346

Interestingly, both plaintiff and defendant rely upon these cases in support of their respective positions; plaintiff on the theory that the imported modules and gooseneck constitute an integrated unit dedicated to particular use and incapable of functioning without connection to a fifth wheel which receives a transfer of substantial weight from the gooseneck, modules and load; defendant on the theory that the imported modules each represent a free-standing trailer, both ends of which rest on its own wheels at all times.

This court is of the opinion that both *Border Brokerage, supra,* and *International Spring, supra,* strongly favor plaintiff's case. There is overwhelming and uncontradicted record evidence that the imported merchandise is coupled to a fifth wheel on a truck tractor and that a substantial part of the weight of the gooseneck, modules and the carrying load is transferred to the truck tractor (R.49, 63, 114). The record also shows the merchandise has electrical (R.34), hydraulic (R.51), steering (R.39), and braking systems (R.35) all connected to the truck tractor and all under direct control of the truck tractor driver.

Further evidence of the dedication for a specific use is borne out by Mr. Bolay's testimony that the merchandise in issue cannot be pulled or operated by any other vehicle other than a truck tractor (R.61). Mr. Weber testified similarly (R.118). Thus, the record evidence clearly demonstrates that the imported merchandise meets the critical standards to be deemed a semitrailer.

Defendant attempts to strengthen its case by relying on a Protest Review Decision, P.R.D. 78–22, 12 *Cust. Bull.* 1152 (1978). However, perusal of that review indicates facts different from the present case. The review in part states:

> The subject merchandise, invoiced as heavy-lift semitrailers, consists of flat-bed trailer modules *designed to be drawn by a motor vehicle such as a truck tractor, by means of a gooseneck, or drawbar. In its condition as imported, each trailer module is without auxiliary motive power, truck tractor, or gooseneck or drawbar for attachment to a truck tractor. The record shows that each module is constructed so that all its own weight and that of its load will rest upon its own wheels.* Such load will include long and irregularly shaped loads such as poles, logs, and pipes. The subject modules can be joined together to form longer trailers (emphasis supplied) at 1153.

It is at once evident that the merchandise in the review decision is dissimilar to the merchandise here. That merchandise was designed to be used with a gooseneck *or* a drawbar but was imported with neither. Only the trailer module, constructed so that all its own weight and that of its load *would rest upon its own wheels,* was imported. In effect, P.R.D. 78–22, *supra,* strengthens plaintiff's case, not defendant's.

Defendant has unsuccessfully attempted to defend its position that the imported merchandise is merely a free standing trailer which sustains its own weight. In order to accomplish this goal defendant views the merchandise only as the individual modules standing alone. However, defendant has offered no evidence in support of its contention, but as the testimony has borne out, the imported merchandise was shipped as an integrated unit, the gooseneck and the modules. It was shipped in one shipment (R.65) and sold as an integrated unit. Both expert witnesses testified that in their professional opinion the merchandise in issue would be classified as a semitrailer (R.43, 117).

Plaintiff has established that the imported mrchandise is a semitrailer dedicated to use with a truck tractor but imported without a truck tractor, and, therefore, the merchandise is properly classifiable under item 692.27.

## Conclusion

Plaintiff has successfully demonstrated that the imported merchandise is a semitrailer improted without a truck tractor thus showing the correctness of its claimed classification. As such, the merchandise is properly classifiable under item 692.27 and not under item 692.60 as incorrectly classified by defendant.

# APPENDIX I