**MARUBENI AMERICA CORP., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Court No. 90–04–00210.**

United States Court of
International Trade.

May 14, 1993.

---

**19.** *E.g., E.I. DuPont de Nemours & Co. v. Davis,* 264 U.S. 456, 462, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924), and cases cited therein.

**1522**

Sharretts, Paley, Carter & Blauvelt, P.C. Gail T. Cumins, Ned H. Marshak, Peter Jay Baskin and Michele R. Markowitz, New York City, for plaintiff.

Stuart E. Schiffer, Acting Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civil Div. U.S. Dept. of Justice, Saul Davis, Carla Garcia–Benitez and Edith Sanchez Shea, Karen P. Binder, Office of the Asst. Chief Counsel, Intern. Trade Litigation, U.S. Customs Service, Washington, DC., of counsel, for defendant.

## OPINION

RESTANI, Judge:

This matter is before the court for decision following a trial *de novo*. The issue before the court is whether Model Year 1989 and 1990 two-wheel and four-wheel drive Nissan Pathfinders are properly classified under the Harmonized Tariff Schedule of the United States ("HTS"), heading 8704, "Motor vehicles for the transport of goods," or under heading 8703, "Motor cars and other motor vehicles principally designed for the transport of persons (other than those of heading 8702 [public transport passenger vehicles]), including station wagons and racing cars." There is no dispute as to the placement of the merchandise under the appropriate subheadings. If defendant prevails, classification will remain under item 8704.31.00, HTS, based on weight. If plaintiff prevails, classification will be under item 8703.23.00, HTS, based on engine size.

### Background

The merchandise at issue is a two door multipurpose passenger vehicle ("MPV"), also known as a sports utility vehicle. The vehicle uses the same frame side rails as Nissan's "Hardbody" compact pick-up truck, and its front end is largely identical to the Hardbody's cab portion. The Pathfinder, however, does not have a cargo box, which is the hallmark of any pick-up truck. Instead, its body consists of one unit and the inside is configured like an ordinary station wagon, with a rear seat or seats that fold down for extra cargo space. The Pathfinder would be a station wagon, except that it is designed for off-road use, whereas station wagons are designed for on-road use.

■ At this point, it may be appropriate to mention the Explanatory Notes to the Harmonized Commodity Description and Coding System, published by the Customs Co–Operation Council. The Pathfinder literally fits the Explanatory Note definition of a station wagon, which is a very broad definition.[1] The definition, however, likely would

---

1. "Station wagons" are defined as "vehicles with a maximum seating capacity of nine persons (including the driver), the interior of which may be used, without structural alteration, for the transport of both persons and goods." Customs Co–Operation Council, 4 Harmonized Commodity Description and Coding System, Explanatory Notes, Heading No. 87.03 (1st ed. 1986).

encompass some vans which are to be classified under heading 8704.[2] Most likely the station wagon definition was not meant to cover vans that do not have tailgates. A tailgate is one of the hallmarks of a "voiture du type "break"," which is the French term for "station wagon" as used in the Explanatory Note. Harmonized Commodity Description and Coding System, Heading No. 87.03 (1st ed. 1987). On the other hand, as indicated, traditional station wagons are not off-road vehicles. Thus, the Explanatory Note defining station wagons should not be read too literally. In any case, the note is not binding, although such notes are "generally indicative of proper interpretation of the various provisions of the [Harmonized Tariff System]." *Lynteq, Inc. v. United States,* 976 F.2d 693, 699 (Fed.Cir.1992) (quoting H.R. Conf.Rep. No. 576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582). Also instructive, but nonbinding, is the decision of the Customs Co-Operation Council to classify the Pathfinder under heading 87.03. Report to the Customs Co-Operation Council on the Fifth Session of the Harmonized System Committee, Annex G/4 to Doc. 35.960E (HSC/5/Apr. 90) (G/4/2/Rev.) (Apr. 12, 1990); Report to the Customs Co-Operation Council on the Sixth Session of the Harmonized System Committee, Annex L/9 to Doc. 36.300E (HSC/6/Nov. 90) (Nov. 6, 1990). Excessive reliance on such a decision, however, may be in conflict with the court's duty to make *de novo* factual findings. The court deems it more useful to set aside these matters and to proceed to a factual assessment of the merchandise.

[redacted] In exercising its factfinding function, the court does not rely on the classification of two Pathfinder models not before the court. One is the E-Model, a little sold, bare-bones vehicle with no back seat, which was classified under heading 8704, HTS, and the four door model which is classified under heading 8703, HTS. The classification of either of these vehicles may be in error and is subject to *de novo* challenge. *See Toyota Motor Sales, USA, Inc. v. United States,* 7 CIT 178, 194–95, 585 F.Supp. 649, 662–63 (1984) (disparate treatment of similar merchandise is not controlling), *aff'd,* 3 Fed.Cir. (T) 93, 753 F.2d 1061 (1985). Accordingly, the court, for most purposes, excluded evidence on either vehicle. The court limited evidence to the vehicle models in the entries currently being considered, except for evidence providing a comparison with vehicles readily accepted as "trucks" or "passenger cars."

The trial in this matter occupied three weeks, including test drives, videotape viewing, document review and opening and closing arguments. Thus, it is impossible to discuss anything other than a few highlights of the evidence.

### *Discussion*

[redacted] The issue in this case is whether the Pathfinder is principally designed for the transport of persons. Although defendant's classification of the Pathfinder as a vehicle for the transport of goods carries a presumption of correctness and plaintiff has the burden of proof, defendant's task was difficult from the outset. That is, one of the first steps was a viewing of a sample of the subject merchandise, which was available to the court throughout the trial. The sample virtually shouts to the consumer, "I am a car, not a truck."[3] Defendant's counsel, however, put on a good deal of evidence to show that certain segments of the automotive manufacturing industry, including persons within Nissan, view the subject merchandise as a "truck," at least for some purposes. *See, e.g.,* Defendant's Exhibit 131, at 48–49 (Deposition of J.P. Felix). Therefore, defendant's approach to the case, and probably the only sensible approach from its point of view, was to try to establish that the Pathfinder fits the

2. An Explanatory Note of the Harmonized Commodity Description and Coding System indicates that heading 87.04 covers, in particular, "[o]rdinary lorries and vans (flat, tarpaulin-covered, closed, etc.); delivery trucks and vans of all kinds, removal vans...." 4 Harmonized Commodity Description and Coding System, Explanatory Notes, Heading No. 87.04.

3. Once again, the cliché that the "sample ... is a very potent witness," *United States v. Halle Bros. Co.,* 20 CCPA 219, 221, C.A.D. 3552 (1932), appears true.

common industry meaning of the term "truck." As trucks are by definition vehicles designed for the "transport of goods," classification under heading 8704, HTS, would follow.

Defendant went about its task in several ways. First, it emphasized all the similarities to the Hardbody compact pick-up truck and the dissimilarities to the Nissan Maxima, Nissan's top of the line sedan, which has the same size engine as the standard Pathfinder. The selection of the Nissan Maxima as the comparison vehicle was ostensibly made on an objective basis, after survey of the automotive market. Defendant's witness admitted, however, that he used numerous subjective and, to the court's mind, suspect criteria to select the Maxima.[4] Defendant's counsel's remark that the witness had to select a Nissan product to make a parts comparison is probably closer to the mark. In any case, it is clear that few Maxima parts are used in the Pathfinder, although there are numerous functional analogues. Apparently, there was no Nissan station wagon to use for comparison. The court doubts any other sedan would be more comparable, so from that standpoint the comparison is acceptable. Overall, the court sees little use, however, in comparing the Pathfinder to a sedan, as opposed to a station wagon.

A. *Comparison of the Pathfinder and the Hardbody Pick–Up Truck reveals significant differences.*

   1. Numerous design changes were made to accommodate passengers in the Pathfinder.

At trial, both parties embarked upon a comparison of the Hardbody and the Pathfinder. This is an area worth some consideration because the Pathfinder is a Hardbody derivative. The extent to which it differs from the Hardbody and the reasons for the differences are probative. The Hardbody is Nissan's compact pick-up truck. It has many features intended to give it passenger-car élan. It also has the open cargo box that is characteristic of a pick-up truck. Although the Hardbody is used principally as a general transportation vehicle, it is accepted as a "truck," albeit a compact pick-up truck with correspondingly inherent limits on cargo capacity.

Mr. Noguchi, Nissan's principal design engineer in the 1983 development period, testified that Nissan, a late entrant to the field, wanted to build an MPV to compete with the Ford Bronco II and similar vehicles. These vehicles have great flexibility, are suitable for people and cargo, and can travel through mud, snow, and other off-road terrain. The court would call these vehicles "compact" MPV's. This is in contrast to full size MPV's, which are not the subject of this action. Nissan's idea seemed to be to grab some portion of the compact pick-up truck market that might be switching to MPV's. It is not clear to what extent the designer foresaw that ordinary passenger car buyers would eventually switch to MPV's, but design documents indicate that this market was considered. Wanting to achieve this goal economically, and to avoid building a new plant, Mr. Noguchi decided to use as much of the Hardbody, which had some off-road capability, as possible. A decision was made to use the Hardbody frame side rails, which were expensive parts to manufacture.[5]

To keep the vehicle short, with appropriate departure angles for unlevel terrain, Mr. Noguchi designed a short rear bumper into which the frame was inserted. The Hardbody bumper was wider and outside the frame. Because of the rear passenger seats, the gas tank was moved to the rear and the spare tire position was changed. Of great concern to the designer was passenger ride, so a new rear suspension was developed. The court credits Mr. Noguchi's testimony that this was an expensive, innovative and

---

4. For example, comparative engine size overpowered all other selection criteria, and "expensive" vehicles were excluded.

5. There is a question as to whether the two-wheel drive Hardbody had weaker C-section side rails. Mr. Watanabe so testified, but documentary evidence implies the opposite. The court tends to believe Mr. Watanabe as he was a Hardbody designer. This is not particularly significant, however, as both the four-wheel drive Hardbody and the Pathfinder used stronger box-section side rails.

important change. Instead of a typical truck leaf spring suspension, which has a different ride at different loads, a five link coil suspension was used. This and the change in the gas tank position led to use of tubular cross beams, not present on the Hardbody frame, in the rear of the frame, and one more cross beam overall.

The factfinder rode in both a 1989 Pathfinder and a 1989 Hardbody. A significant difference in ride is discernible, even from the front seat, the only seat in the Hardbody model provided. The Hardbody ride is bumpier, that is, more "trucklike." Essentially, the same route was used and if differences in tires or shock absorber settings could account for this great difference, it was not part of the testimony in this case.

Other adjustments to the Hardbody design, ostensibly for passenger comfort, were noted. The court did not find front suspension differences of great significance. There seemed to be more significance to lowering the entire vehicle fifty millimeters for ease of entry. Likewise, improving the seat slide makes entry to the rear seat easier, although not as easy as entry into a sedan. Plaintiff's witnesses testified that the Hardbody door had already been widened and was adequate for this purpose. Also, the Pathfinder comes with a larger standard engine than the Hardbody. The Pathfinder engine is, in fact, the same size as the Maxima's, but there are differences from the Maxima engine because of the Pathfinder's various purposes. Plaintiff's witnesses testified that for performance reasons the larger engine was made a standard feature. The court believes there were numerous reasons for the engine change and they favor both sides. The other powertrain, axle and wheel differences are all minor, but are consistent with the Pathfinder's off-road mission, particularly in a loaded condition.

■ The main difference in the two vehicles is the overall body design. The Hardbody is a cab and cargo box, with virtually unlimited vertical space, unless capped. The Pathfinder has a station wagon body. This is

a very important distinction. As Mr. Noguchi testified, the solid body dampens noise and protects against dust and wind. The body mounts are also different. The court credits Mr. Noguchi's testimony that these changes are for passenger comfort. Testimony of the intent of plaintiff's designer is probative, particularly when the intent appears to have been realized. *See Pistol Fashions, Ltd. v. United States,* 5 CIT 284, 286 (1983). Importantly, the station wagon body also provides space for a back seat. The roof was raised somewhat and leg room in the back seat is excellent—so excellent that with the back seats up for passengers, the Pathfinder's cargo space is *limited* compared to that of midsize station wagons.[6] Overall, rear seat area compares favorably with that of midsize wagons. *See* Plaintiff's Exhibit 62.

At this point, the court wishes to discuss defendant's exhibits 127 and 128. These are computer-designed models of the Pathfinder and Hardbody, which are superficially similar. The Hardbody model is equipped with a representation of an after-market cargo bed cap made to resemble the Pathfinder's rear window configuration. The Pathfinder model's rear seat and cargo area may be exposed in the model by lifting a cap-like portion of the model. One may not do this with an actual Pathfinder, without using a blowtorch.[7] For a better comparison of the exterior of the two vehicles, one should compare plaintiff's exhibits 1 and 2, which clearly show the different configurations between the vehicles as manufactured, including the clear divide between the cab and cargo box of the Hardbody.

The rear seat area is not an afterthought. By riding in the back seat, the factfinder was able to determine that the seats are comfortable; they also recline. Although the rear seats fold forward to make a fairly flat cargo bed, they are not removable. There are rear seat stereo outlets. There are ashtrays, cubbyholes, arm rests, handholds, footwells, seat belts, child seat tie down hooks, and operable

---

6. The evidence revealed that midsize station wagons, rather than small or large ones, provide the best passenger-car cargo capacity comparisons.

7. Defendant's counsel took pains not to obscure this distinction.

windows. While none of these are basic structures, there is not much more which can be done to make a substantial rear seat area. Furthermore, no difference from passenger car rear seat areas was revealed. This is in contrast to side-facing flip-up seats in a king cab pick-up, which the factfinder was able to observe during a ride in a 1993 Ford Ranger compact pick-up; it is also in contrast to removable-type rear seats. Two medium sized attorneys were compressed into the rear seat area of the king cab, which is obviously designed for short rides, probably for children. Some pick-up cabs also have full rear bench seats for "crews." These usually do not recline and witnesses for both sides testified the seats were not comfortable and also were only for short rides.

Overall, while the Hardbody and Pathfinder share some basic structural components, they were developed separately, and they were based on totally different concepts. Anyone who planned to buy one vehicle probably would not buy the other. The chassis is different, the body is different, and there is a substantial rear seat area which affects cargo space in the Pathfinder. Not insignificant is the great price difference between the simple cab and cargo box pick-up truck and the Pathfinder, a fairly expensive vehicle.[8]

> 2. The Pathfinder's cargo carrying capability is inferior to the Hardbody's and compares well with that of station wagons.

Cargo capacity data produced by both sides reveal that the Pathfinder's cargo capacity falls within the range of cargo capacities for midsize station wagons in rear seatdown configuration. Defendant produced some good regression analyses, which demonstrated that the Pathfinder lies outside the predicted line for station wagons when weight-driven (and to a lesser extent shadow area) factors are compared to cargo capacity. But the weight and shadow area of the Pathfinder are explained by its off-road capability. A visual examination of a Volvo 740 station wagon (a slightly longer vehicle) revealed the Volvo and Pathfinder to be functionally equivalent in this capacity. In terms of cargo capacity, they are remarkably similar in boxiness, overall size, rear opening, and configuration, even in the way in which the bottom of the rear seat pops up when the top folds down, which intrudes into the cargo space.[9] The Pathfinder's height from the ground may make it somewhat easier to load, but overall it does not differ significantly from a station wagon in terms of ease of loading or unloading. A depiction of the cargo areas of an earlier model of the same Volvo and the Pathfinder is found in plaintiff's exhibit 40. The court has also taken note of the cargo bed of the Hardbody, depicted in plaintiff's exhibit 42. It has no carpeting. It is uncovered and it has a supported fold down tailgate.[10]

The court notes at this point that whereas a pick-up may be loaded with an industrial fork lift, not so a Pathfinder because of its pop-up tailgate. A feature of the Pathfinder tailgate is a separate window opening to allow deposit of small packages, a passenger convenience rather than a true cargo feature. Furthermore, the Pathfinder's cargo area is quite plush and is not designed for moving dirty items without considerable packaging or use of a liner, whereas a pick-up can be easily washed out. As indicated previously, in the seat-up mode, the Pathfinder's cargo volume capacity is poor, although its 400 pound cargo weight capacity is not. Defendant also makes an argument that the Pathfinder's maximum capacity for persons (using a 150 pound standard), is 750 pounds, while its cargo carrying capacity (or payload) is

---

**8.** The court is glossing over trim level differences and differences between two- and four-wheel drive vehicles because they are not significant to the outcome. Most sales were of the four-wheel drive version, at the highest trim level. Stipulation of Facts, Attachment E.

**9.** Wheel houses intrude as well, but these were shortened from the Hardbody design to fit better into the rear seat area of the Pathfinder.

**10.** Testimony was that the Hardbody bed is designed so that a hobbyist's four-by-eight plywood sheet will ride on the tailgate. The Pathfinder was not so designed; the flip-up gate does not travel well in the open position.

1,000 pounds. In terms of volume, maximum passenger space compares favorably with maximum cargo space. Furthermore, payload does not vary significantly from that of comparable station wagons.

B. *The Pathfinder was designed for off-road passenger use.*

The second of defendant's approaches was to challenge the testimony of plaintiff's witnesses that revealed that the off-road capability of the Pathfinder accounted for some of its similarity to a truck. Defendant's view is that the strength and weight of the Pathfinder is for cargo, and particularly cargo off-road. Important features that do not relate specifically to cargo are Pathfinder approach, departure and ramp over angles and ground clearance, all clearly for off-road use and superior to that of passenger vehicles. In fact, it is the Pathfinder's ground clearance, together with its stubbiness, which makes it look different from a passenger car or a capped pick-up truck.

Defendant's view is that the rear seat head clearance is less than that in the front seat and that a passenger of six feet or more would bump his or her head on serious off-road terrain. Thus defendant argued, strength and weight of the Pathfinder must be for off-road hauling of cargo, not people. First of all, there are seat belts; second, the seats recline; and third, one would imagine a six footer might switch to the front seat if he or she truly wishes to go bouncing over rough terrain. Also, it is stipulated that the automotive designers designed for 150 pound people. It was not clear what height is considered the norm for this purpose, and 150 pounders would make somewhat thin six footers.[11]

Defendant also relies on evidence of low off-road usage. One of plaintiff's witnesses testified off-road use was about ten percent of usage. Maritz market studies show high *occasional* off-road usage, and little *frequent* off-road use, but it is not disputed that the vehicle is designed for the most stressful use.

The court has concluded that this is fully loaded off-road use. The Pathfinder cannot be sold as an off-road vehicle without practical off-road capability, even if many customers want off-road cachet more than off-road use.

Defendant also disputes that the Pathfinder's front end is actually designed for off-road passenger use. It put in evidence of the large truck-like front brake rotors and aftermarket snow plow features.[12] Snow plows do not come with the vehicles and the front end strength is consistent with winching the vehicle out of mud as well as winching tree stumps out of the ground. If one wishes to buy an expensive Pathfinder to do pick-up truck jobs one may, but it seems a waste of money, unless one wants superior passenger accommodations as well.

A good deal of testimony was devoted to towing. The Pathfinder has the weight, the strength and the engine to tow more than a station wagon of comparable size. The same factors are needed for good loaded off-road capability, and do not greatly influence the outcome.

C. *The level of front seat and cab comfort in trucks is not determinative.*

Defendant's third approach was to meet plaintiff's testimony regarding the Pathfinder's passenger amenities by demonstrating that various trucks were equally congenial. It produced a 1993 Ford Ranger compact truck, which rode slightly better than the Pathfinder and had numerous creature comforts. As the Ranger was right off the assembly line and compact pick-up trucks are used as substitutes for entry level passenger cars, this evidence was not surprising. That compact pick-up trucks are becoming very like passenger cars may someday call into question their classification, but it does not affect the classification of the Pathfinder. Similarly, that heavy trucks are often quite comfortable or have superior suspension systems, particularly at the high end, does not

---

**11.** The 95th percentile American male, a six footer, was used for head room and leg room for some purposes. *See* Plaintiff's Exhibit, Ref. No. 3, Bates No. 1581.

**12.** Pathfinders have front disc brakes rather than drum brakes, a more truck-like feature. Front leg room is also an improvement over the Hardbody.

affect the classification of the merchandise at issue.

D.  *Marketing and use indicate the Pathfinder was designed for transport of persons.*

The fourth area of concern was marketing, as reflective of design intent and execution. It is fairly clear from the evidence that cargo capacity was not a major objective of the designer vis-á-vis the competition, at least as reflected in its polar charts. *See, e.g.,* Plaintiff's Exhibit, Ref. No. 17, Bates No. 23523. Product development documentation and advertising were consistent.[13] The emphasis was on family use, loading groceries and sports equipment and "go anywhere" élan.

This was quite a contrast with truck advertising, which overwhelmingly emphasized ruggedness and masculinity rather than family use. While marketing is not very important in this area because of the desire to portray the vehicle as "everything for everybody," marketing was much more passenger oriented than cargo oriented. This is also consistent with customer use information. Personal goods or business goods hauling was not a major concern.

E.  *Regulatory schemes and industry terminology that classify sports utility vehicles as a subcategory of trucks do not control tariff classification.*

The fifth and strongest area for defendant is definitional. Throughout Nissan's documents and advertising, the Pathfinder is schizophrenically referred to as a "truck" and a "car."[14] Apparently, Nissan is not alone in this regard. The automotive industry was once clearly divided into cars and trucks. Sports utility vehicles employing truck-like frames[15] are often made in separate truck divisions and are included in pick-up truck/sports utility vehicle sales line-ups. In fact,

the Pathfinder and the Hardbody share an owners' manual. From a basic structural engineering viewpoint, one might, without dissembling, call the Pathfinder a "truck." Ford and Chrysler's engineers reflected this view. This does not make the Pathfinder a "truck," nor does it mean that the Pathfinder is not principally designed for carrying people. The classification is not controlled by the fact that certain basic structures are suitable for trucks. As indicated, there were some basic structural changes and numerous other design points which were all for the purpose of accommodating passengers. While the latter changes may seem minor to engineers, they are part of the total design of the vehicle. In fact, one of defendant's engineers, when asked, could not think of how to make a sports utility vehicle which would be more suitable for passenger use.[16] Another said he would add some more hand holds—hardly a major change.

This engineering view of life, which is keeping the automotive world uncomfortably divided into car and truck hemispheres, is also reflected in classifications from the Society of Automotive Engineering ("SAE"), National Highway Traffic Safety Administration ("NHTSA") and the Environmental Protection Agency ("EPA"). MPV's are treated separately from passenger cars and often are a subcategory of "trucks." The fact is that MPV's are different from what are ordinarily considered passenger cars because of off-road capability, and also from trucks, which are often defined as vehicles primarily designed for the transport of property.

■ That Nissan took advantage of legal NHTSA and EPA classifications to avoid certain "passenger car" requirements does not alter the outcome of this tariff case. Safety, in particular, is a matter of degree. That some safety features were not included does not weigh heavily in the classification analy-

---

13.  The marketing and product planning documents mention cargo capacity. It does not appear to be a high priority. *See* Plaintiff's Exhibit, Ref. No. 22, at Bates Nos. 5200–20.

14.  The Japanese word for "car" has a broad meaning, but in discussing the Pathfinder Nissan also used the word "wagon" or referred to passenger or sports car use.

15.  A few passenger cars use body-on-frame construction; most use unibody construction. Likewise, a few trucks and one MPV use unibody construction.

16.  He indicated that he might investigate whether the chassis was unnecessarily strong.

sis. The Pathfinder does not have to be a "passenger car" as defined by SAE, EPA or NHTSA in order to be principally designed for carrying people. MPV's are *multipurpose passenger vehicles* as opposed to *on-road passenger cars*. The definitions and classifications of NHTSA, EPA and similar organizations are not intended to control customs classification. *See International Spring Mfg. Co. v. United States*, 85 Cust.Ct. 5, 8, C.D. 4862, 496 F.Supp. 279, 282 (1980), *aff'd*, 68 CCPA 13, C.A.D. 1257, 641 F.2d 875 (1981). It would also be incongruous if such regulations did cause MPV's to be classified as "trucks," as MPV's will soon be required to meet many "passenger car" standards. These are separate questions and cannot be disposed of together.

In sum, the court has little doubt that the Pathfinder is *principally* designed for the transport of persons. Goods carrying capacity and special purpose uses clearly total less than fifty percent of design intent and execution.[17] Accordingly, the merchandise at issue shall be classified under item 8703.23.00, HTS. Any excess duties paid shall be refunded with interest as provided by law.

---

17. The court accepts defendant's premise that if the Pathfinder were designed fifty percent for passenger use and fifty percent for cargo or special purposes, it would not be classified under heading 8703, HTS.